JENNIE L. LEE v. VILLARD CONSOLIDATED SCHOOL DISTRICT NO. 5 AND ANOTHER.[1]

November 2, 1934.

No. 29,930.

[1]Reported in 257 N. W. 90.

*Weikert, Lohmann & Felhaber,* for relators.
*Frank J. Zima,* for respondent.

STONE, *Justice.*

*Certiorari* to the industrial commission to review an order granting compensation to the widow and dependent children of Glen Lee, deceased.

There is no question but that Lee came to his death February 14, 1933, as the result of an accident which was found by the commission to have arisen out of and as a result of his employment. Relators' challenge of that finding raises the first question for consideration.

Lee was employed by the school district to use his own motor bus to take certain of the children to and from the schoolhouse at Villard. The accident occurred on a cold and stormy afternoon while Lee was on his way to the schoolhouse to get the children and take them to their homes. His contract of employment was in writing and obligated him "to travel over the route and make stops according to the time-table and plat furnished by the school board and school principal." Neither such time-table nor plat, if any, is in evidence. Lee also was required to use his bus and its accessories for no other purpose than transportation of the pupils without special permission from the principal. He had to "keep the blankets dry and clean and in good condition and to prepare foot-warmers as the condition of weather demands as directed by the principal." The contract had this to say about the route to be followed: "The said Lee shall start at his place and thence into schoolhouse then out on No. 28 [a trunk highway] to Bergs and in to schoolhouse." Driving the bus occupied on an average not to exceed three hours a day of Lee's time. He was a farmer in a small way and in the wintertime, at least, may have had other employment.

We have gone into the contract sufficiently to show that the school district, as employer, had the right to designate the route to be followed by Lee. To the extent indicated, the contract itself did so. The right to control Lee in his operation and care of the bus began when he left his home, morning or afternoon, for the pupils. Doubtless the school district reserved that power to make sure not only that the bus operated on time, but also that it would furnish the pupils comfortable transportation and proper shelter. With such basis of fact in the contract and its subject matter, we certainly cannot, as matter of law, deny adequate foundation for the conclusion, implicit in the finding of the commission, that, when Lee left his home on the way to the schoolhouse on the evening in question, he had from that moment ceased to be a farmer, or whatever other sort of workman he was the moment before, and at once had become an employe of the school district in the performance of his contract of employment. The finding that the accident arose out of and in the course of the employment is sustained.

■ The amount of the award is questioned. Lee was paid $30 per month and worked an average of three hours per day five days a week. The evidence is that $10 was for the bus hire and $20 for Lee's service as its driver. The commission considered Lee a part-time worker and computed his weekly wage by first reckoning his hourly wage on the basis of three hours a day and then multiplying the result "by the number of hours of the normal working day for the employment involved." The normal working day was taken as one of eight hours.

It is declared by our compensation law, 1 Mason Minn. St. 1927, § 4325, that:

"'Daily wage' as used in this act shall mean the daily wage of the employe in the employment in which he was engaged at the time of the injury, and if at the time of the injury the employe is working on part time for the day, his daily wage shall be arrived at by dividing the amount received or to be received by him for such part time service for the day by the number of hours of such part time service and multiplying the result by the number of hours of the normal working day for the employment involved. * .* *

"The weekly wage shall be arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved; provided that the weekly wage shall not be less than five and one-half times the daily wage."

If Lee was a part-time worker within that statute, the compensation due petitioner was correctly computed. We pass without much comment the contention that there is no evidence supporting the commission's adoption of an eight-hour day as the normal one for the employment in question. It is sufficient answer that there is neither evidence nor presumption supporting any other conclusion. And, fortunately, the time has come when, in a compensation proceeding, the burden is upon him who alleges it to show that the normal working day is more than eight hours.

For relators it is argued that "there is no hardship worked on the widow and her dependent children by giving her in compensation the actual pay received by her husband during his lifetime. Her economic condition has not changed by reason of his death if she receives" the income she did during his lifetime. "The sole loss of income to the family has been this amount which was received from the school district." That conclusion is wrong. Petitioner and her children have lost in proportion, not to a fraction, but to the whole of the earning power of the husband and father taken from them by the accident. Moreover, the argument ignores not only the language of § 4325 above quoted but also the purpose of the compensation law. The latter, within the fixed pecuniary limits, is to relieve injured workmen and their dependents of the loss resulting from industrial accidents and to impose it upon the affected industry. The loss resulting from death or disability of a part-time worker subject to the act must be measured, if its objective is to be reached and if the plain command of § 4325 is to be obeyed, not only by his wages in the particular employment in which he was injured but also his earning power in other occupations, if any. Were the award to be made upon the narrow basis of the part-time earnings, the deprivation would go uncompensated in proportion as

wages or capacity for earnings in other employment are ignored. To that extent, the purpose of the law to erect a new standard of industrial justice would be thwarted. To secure compensation for actual loss, within the pecuniary limits of the statute, § 4325 fixes the measure of compensation for injury or death of a part-time employe. It was properly applied in this case.

Stevens v. Village of Nashwauk, 161 Minn. 20, 200 N. W. 927, was a case of a volunteer fireman fatally injured in the line of duty. The deceased was a part-time employe, but because the decision was put largely upon factors not present here it is not controlling. In Anderson v. Roberts-Karp Hotel Co. 171 Minn. 402, 214 N. W. 265, 267, there was part-time employment by each of two employers but full time employment if the hours worked for both are considered. The commission computed compensation on the basis of the total earnings of the employe rather than upon the wages paid by the employment in which the injury occurred. That conclusion was sustained. The decision is helpful because of its discussion of the statute and its review of the authorities. In that case the claimant had been employed as a janitor by both employers, and the wages paid by both were in evidence. Here we have evidence of but one employer and of the wages paid by it. Other employers, if any, and the rate of compensation received from them are out of the picture. Remains the fact, however, that Lee was a part-time employe of the school district and, as said in the Anderson case, 171 Minn. 402, 405, 214 N. W. 265, "if * * * the amount recoverable were to be measured by the wage received from the particular employer in whose services the injury was sustained," there would be "no compensation for the loss of earnings resulting from his inability to perform in the future the services which he had previously performed for other employers. The theory of the statute is opposed to such a result." Here compensation is wanted for the death of a workman, and the loss is total. There is no ground for the argument that, simply because he was a part-time employe, there can be no award as for a total loss, but only a partial and relatively small return based upon his income from the part-time employment. As already indicated, the purpose of the statute and the

454

express language of § 4325 combine to make that argument untenable.

Order affirmed.