ERIK OLSON v. TRINITY LODGE NO. 282, A. F. & A. M.,
AND ANOTHER.[1]

April 6, 1944.

No. 33,712.

R. Vern Eckman, for relators.
J. H. Louisell, for respondent.

LORING, CHIEF JUSTICE.

Certiorari to review an award by the industrial commission. There is no contention that the accident suffered by employe did not arise out of and in the course of his employment. Nor is there

[1]Reported in 14 N. W. (2d) 103.

disagreement concerning the duration of the compensable "healing period." The only questions presented are: (1) Was there competent evidence upon which a finding of permanent partial disability could be based? (2) Was petitioner entitled to compensation at the maximum weekly rate?

There is little dispute on the facts. Employer maintains a lodge building in Duluth. Employe was employed as a janitor and was injured by a fall from a ladder used in putting on storm windows. He was a part-time janitor, his duties consisting of tending the furnace, sweeping floors, and, of course, putting on and removing storm windows. The work was intermittent; during the summer when the lodge did not meet, there was little to do; at other times he worked long hours. On a year-round basis, the secretary of the lodge estimated employe's work at "about" an hour a day. Employe testified that it would "not take over an hour a day the year around." His principal occupation was that of carpenter for another employer at a rate of 84 cents per hour, 40 hours a week, with time and a half for overtime.

For the janitor work, employe received no cash wages. Instead, he was furnished with living quarters in the lodge hall and free use of the premises, including the telephone for private and business purposes. This arrangement had continued for over ten years.

The commission awarded employe 15 weeks' compensation for permanent partial disability due to a limitation of the use of the injured ankle. This finding is amply supported in the record by the testimony of Dr. Houkom. Relators contend that this doctor's testimony was not competent under the rule laid down in Faltico v. Minneapolis St. Ry. Co. 198 Minn. 88, 268 N. W. 857, and Preveden v. Metropolitan L. Ins. Co. 200 Minn. 523, 274 N. W. 685; that the opinion of a physician as to the condition of an injured or diseased person, based wholly or in part on a history of the case as told to him on personal examination, is not admissible in evidence where the examination was made solely for the purpose of qualifying the physician as an expert witness and not for the purpose of treatment. The doctor at first testified that he had formed an

opinion based in part on history given him at the examination. He was not allowed to give such opinion, but he subsequently qualified himself to give an opinion without taking such history into consideration. He gave his opinion and the reasons therefor. With this foundation, the doctor's testimony was competent evidence upon which a finding could be based. Even though a doctor may examine a patient for the sole purpose of qualifying himself as an expert witness, his opinion is competent evidence if based on his examination and not on a history given him by the patient. Fulmore v. St. Paul City Ry. Co. 72 Minn. 448, 75 N. W. 589.

■ The commission has found that employe was a "part-time employe" at "a weekly wage for compensation purposes in excess of $30.00." No memorandum accompanies the decision to explain how this figure was arrived at. In a case of this kind, where the employe worked at two employments and was injured while engaged in one which paid him no monetary compensation, such a memorandum would be helpful.

Relators contend that the commission must have considered employe's wages as a carpenter for another employer in order to arrive at this figure. We do not think so.

Minn. St. 1941, § 176.01, subd. 14 (Mason St. 1941 Supp. § 4325), provides:

" 'Daily wage' means the daily wage of the employee in the employment in which he was engaged at the time of the injury, and if at the time of the injury the employee is working on part time for the day, his daily wage shall be arrived at by dividing the amount received or to be received by him for such part time service for the day by the number of hours of such part time service and multiplying the result by the number of hours of the normal working day for the employment involved. * * *

"The weekly wage shall be arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved; provided, that the weekly wage shall not be less than five times the daily wage. * * *

"Where board or other allowances of any character except gratuities are made to an employee in addition to wages as a part of the wage contract, they shall be deemed a part of his earnings and computed at the value thereof to the employee."

Both employe and the secretary of the lodge testified that the value of the accommodations and privileges received as "compensation" by employe was about $40 per month. The only evidence on the point places the time worked at one hour per day. This reduces to approximately $1.33 per hour. There is no evidence as to what the "normal working day" in this occupation was, although it does appear that the lodge employed a full-time janitor or caretaker at a salary of $150 per month. In the absence of a definite finding, we shall presume the normal working day to be eight hours. Lee v. Villard Consol. School Dist. 192 Minn. 449, 257 N. W. 90. The "daily wage" is arrived at by multiplying the basic hourly rate by eight. The evidence here would support a finding that this would be in excess of $10 per day. The statute prescribes a minimum of five days in computing the "weekly wage." Applying this formula, obviously the commission was justified in finding the weekly wage to be "in excess of $30" for compensation purposes.

Under the facts of this case, there can be no question that employe is a "part-time" employe within the meaning of § 176.01, subd. 14. Lee v. Villard Consol. School Dist. *supra.*

The decision of the industrial commission is affirmed.

Mr. Justice Magney took no part in the consideration or decision of this case.