JAMES R. PODRATZ v. CROSS KEYS MOTEL
AND ANOTHER.

220 N. W. 2d 352.

July 5, 1974—No. 44445.

*Anderson, Hedin & Messinger* and *Douglas A. Hedin,* for relator.

*Mordaunt, Walstad, Cousineau & McGuire* and *Robert J. McGuire,* for respondents.

Heard before Sheran, C. J., and Otis, Scott, and Knutson, JJ., and considered and decided by the court.

SCOTT, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission awarding compensation to relator, James Podratz. Affirmed.

On June 1, 1970, Podratz and his wife were hired as resident caretakers of the Cross Keys Motel. Under the employment contract, the couple were to act as front desk clerks for a total of 14 hours per week. They further were to provide airport transportation for the guests, to handle emergencies that might arise, and to remain on call at all times. In exchange for these services, they were provided with a furnished apartment, utilities, and other conveniences. They were to be paid $1.50 per hour for additional desk work. The contract further provided that relator was to be paid at the rate of $2.50 per hour for any yard and maintenance work performed at the motel.

On May 31, 1970, the Podratz couple moved into residence at the Cross Keys Motel, where they remained and worked until June 29, 1971. Two weeks after moving in, on June 13, 1970, relator allegedly suffered a back injury when he fell down seven concrete steps to a landing outside his apartment. In early October he was again injured while working for the employer on a house next to the motel. He received a laceration on his arm and aggravated the preexisting back condition. This second fall occurred 17 weeks after he had commenced employment for the motel. He discontinued any yard or maintenance work after this second fall, as reflected in his wage record. He was able, however, to continue the front desk work and the airport service for the guests.

On May 1, 1972, the compensation judge awarded relator 38 weeks of temporary partial disability in the sum of $482.58,

together with 35 weeks of permanent partial disability at the rate of $42.62 per week in the sum of $1,491.70,[1] for a 10-percent permanent partial disability of the back, and $90 in medical expenses.

The compensation judge determined that the employee had an average 7-day weekly wage in both June and October, 1970, of $63.92, comprised of $38.54 in earnings and $25.38 attributed to the employee's share in the weekly value of the apartment. The average earnings figure was found by totaling the weekly earnings received from May 28, 1970, through September 24, 1970. This total of $655.25 was divided by 17, representing the number of weeks in the period. The determination of the base period and the method of computation were affirmed by the commission.

■ The first contention by relator is that this method of computation is a misinterpretation of Minn. St. 176.011, subd. 3, which reads in part as follows:

" 'Daily wage' means the daily wage of the employee in the employment in which he was engaged at the time of injury but does not include tips and gratuities paid directly to an employee by a customer of the employer and not accounted for by the employee to the employer. If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine, or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually *earned in such employment in the last 26 weeks,* by the total number of days in which the employee actually performed any of the duties of such employment, provided further, that in the case of the construction industry, mining industry, or other industry where the hours of work are affected by seasonal conditions, the weekly wage shall not be less than five times the daily wage." (Italics supplied.)

---

[1] See, Minn. St. 1971, § 176.101, subd. 3(40) (now Minn. St. 176.101. subd. 3[42]).

Relator contends that the commission is actually amending this section of the statutes to read, "the last 26 weeks or substantial part thereof," by merely utilizing the 17-week period in which the employee worked for the motel. If this contention were accepted, it would work to the detriment of relator since he worked for substantially less remuneration at his prior employment with two colleges under work-study programs. However, the statutory language of "employment in which he was engaged at the time of the injury" removes from consideration any past employment. Therefore, in the absence of a 26-week period upon which to base the average earnings, the commission should deal with reasonable and available time periods that will meet the standard of determining the wages "under normal conditions" in order to satisfy the guidelines suggested by this court in Johnson v. D. B. Rosenblatt, Inc. 265 Minn. 427, 122 N. W. 2d 31 (1963).

The employee contends that inasmuch as his earning capacity was substantially impaired by his first fall on June 13, 1970, the 17-week period utilized by the compensation judge, which was comprised, for the most part, of the period following this injury, does not satisfy the Rosenblatt standard. There is little evidence before the compensation judge and the commission which would substantiate this contention.

The standard for review in cases such as the one before us is clearly defined:

"The general rule as to the scope of review applicable to appeals from the determination of administrative boards is that the function of the supreme court is not to determine whether on the facts the decision of the commission is correct or even preferable to another, but rather, and only, to determine whether it has sufficient basis of inference reasonably to be drawn from the facts. The rule is applicable to our review of a decision of the Workmen's Compensation Commission." MacNamara v. Jenny H. Boyd Trust, 287 Minn. 163, 166, 177 N. W. 2d 398, 400 (1970).

In line with that standard, there is sufficient evidence to support the computations made by the compensation judge and affirmed

by the commission. It is clear after a careful review of the evidence before it, including testimony by the employee that his earning power had been substantially reduced after his first fall, the commission's findings of fact also have ample support.

■ Relator also contends that a different standard should have been used in determining the compensation awarded for 10-percent permanent partial disability of his back under Minn. St. 176.011, subd. 18, which provides as follows:

" 'Weekly wage' is arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved. If the employee normally works less than five days per week or works an irregular number of days per week, the number of days normally worked shall be computed by dividing the total number of days in which the employee actually performed any of the duties of his employment in the last 26 weeks by the number of weeks in which the employee actually performed such duties, provided that the weekly wage for part time employment during a period of seasonal or temporary layoff shall be computed on the number of days and fractional days normally worked in the business of the employer for the employment involved. If, at the time of the injury, the employee was regularly employed by two or more employers, the employee's days of work for all such employments shall be included in the computation of weekly wage. Occasional overtime is not to be considered in computing the weekly wage, but if overtime is regular or frequent throughout the year it shall be taken into consideration. The maximum weekly compensation payable to an employee, or to his dependents in the event of death, shall not exceed 66⅔ percent of the product of the daily wage times the number of days normally worked, provided that the compensation payable for permanent partial disability under section 176.101, subdivision 3, and for permanent total disability under section 176.101, subdivision 4, or death under section 176.111, shall not be computed on less than the number of hours normally worked in the employment or

industry in which the injury was sustained, subject also to such maximums as are specifically otherwise provided."

The employee contends that inasmuch as his greatest cash income was generated from his work as a maintenance man, that should be considered his primary employment for purposes of the statute. Therefore, he states, compensation should be determined by the number of hours that maintenance men generally work, namely 40 hours per week. Lee v. Villard Consol. School Dist. No. 5, 192 Minn. 449, 257 N. W. 90 (1934).

It is clear that the statute is intended to provide maximum compensation for a permanent disability or death. However, it certainly cannot be said that this theory should be extended to include a principle that where multiple duties are involved, the one area of employment that is the most lucrative should be considered for purposes of compensation. Since the employee was hired as a resident manager and desk clerk aside from doing maintenance work, it is apparent that there is also sufficient evidence to support the finding of the compensation judge and the commission here.

We therefore affirm the decision of the Workmen's Compensation Commission.

Affirmed.