Nadia SAWCZUK, Respondent,

v.

SPECIAL SCHOOL DISTRICT NO. 1,
self insured, Relator.

No. 81–454.

Supreme Court of Minnesota.

Nov. 20, 1981.

Fredrikson, Byron, Colborn, Bisbee & Hansen and Thomas S. Fraser, Minneapolis, for relator.

Bassford, Heckt, Lockhart & Mullin, Gregory P. Bulinski and John M. Degnan, Minneapolis, for respondent.

WAHL, Justice.

In this compensation proceeding relator, Special School District No. 1, seeks review of a decision of a divided Workers' Compensation Court of Appeals affirming an award to employee for temporary partial disability.[1] In this court relator contends alterna-

---

1. Relator does not contest the award of compensation to employee for a 15% permanent partial disability of the back.

tively that employee has not sustained wage loss and thus is not entitled to an award or that, if she is, it was erroneously computed by application of Minn.Stat. § 176.011, subd. 3 (1980). We affirm in part, reverse in part and remand for recomputation of employee's daily and weekly wages and of the compensation awarded her.

The record establishes that employee, now 57, has been a kitchen assistant in relator's schools since 1970. Prior to September 1976 she worked an 8-hour, 5-day week during the school year. Relator concedes that in February 1971 employee sustained a work-related back injury while lifting a pan of food. She was disabled for a few days and consulted an orthopedic surgeon, Dr. Orest N. Filipovich, who diagnosed the injury as a strain of the lumbosacral spine. In succeeding years employee continued to work in spite of back pain. At the close of the 1975–1976 school year her hourly wage was $3.89.

During the summer of 1976 relator closed the kitchen in which employee had worked and in September 1976 opened a new nutrition center. Employee was transferred to this center to fill trays, work requiring her to reach and turn constantly. Relator intended that this task be done in a 4-hour day, but initially the operation took longer and employee's hours varied from 4 to 7 a day. Her hourly wage was raised to $4.16.

During the fall of 1976 employee's low back became increasingly stiff and sore and she also began to have pain radiating down her right leg. On November 16, 1976 she again consulted Dr. Filipovich, who felt that she had suffered an aggravation of the earlier strain. Relator does not contest the finding that on this date she sustained a second injury due to the cumulative effects of her work on the prior injury. Although employee missed no work during the rest of the school year, Dr. Filipovich expressed the opinion that she could work at most 4 hours a day because of her back condition.

On September 1, 1977, relator offered employee a full-time job in its food service. Because she could not tolerate the increased work time, employee was unable to take the job.

On this evidence Compensation Judge Daniel B. Gallagher, whose decision was affirmed by the majority of the Court of Appeals, determined that employee has sustained temporary partial disability since September 1, 1977, and pursuant to Minn. Stat. § 176.101, subd. 2 (1980) is entitled to 66 and ⅔% of the difference between her daily wage at the time of injury and the wage she is able to earn in her partially disabled condition. Since employee had worked irregular hours for 9 weeks and 2 days prior to the November 16, 1976 injury, he determined that her daily wage and weekly wage at the time of this injury should be computed pursuant to the statutory provisions defining those terms. Minn. Stat. § 176.011, subd. 3 (1980) defines daily wage to mean—

the daily wage of the employee in the employment in which he was engaged at the time of injury * * *. If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine, or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually earned in such employment in the last 26 weeks, by the total number of days in which the employee actually performed any of the duties of such employment * * *.

Section 176.011, subd. 18 (1980), provides in part:

"Weekly wage" is arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved.

Purporting to apply these provisions, Compensation Judge Gallagher first determined that employee had worked variable hours, as shown by the parties' Joint Exhibit 1, between September 15 and November 12, 1976, and also had worked 10 hours on November 15 and November 16, averaging 26.58 hours per week (239.22 hours divided

by 9). Construing the statute as directing that the 17 40-hour weeks of employment prior to the end of the school year in June 1976 also should be averaged, he determined that employee had worked 919.22 hours during the 26 weeks of her actual employment preceding the injury of November 16, 1976, or an average of 35.35 hours per week. This average he multiplied by $4.16, her hourly wage rate on the date of injury, to determine that she had an average weekly wage on that date of $147.05. Accordingly, he awarded her temporary partial disability compensation from September 1, 1977, when she was unable to return to the full-time position offered her, based on that weekly wage.

The majority of the Court of Appeals in affirming the award also adopted the compensation judge's view that section 176.011, subds. 3 and 11, should be construed liberally in order to achieve the purpose of determining as nearly as possible an employee's true wage on the date of injury. This premise led him to conclude that the reference to "the last 26 weeks" of employment meant the last 26 weeks in which employee had been working for relator and thus did not include the summer weeks off. It also led him to conclude that the average hours worked by employee on the date of her injury should be multiplied by $4.16, the rate she was then earning, even though she had earned $3.89 an hour in the 17 weeks preceding the end of the school year.

■ Relator first urges in this court that it was error to find that employee has sustained any temporary partial disability because she did not suffer wage loss at the time of the injury in November 1976. Although two members of the Court of Appeals considered employee to be a part-time employee at the time of her injury, and therefore agreed that she has not sustained wage loss since she still can work part time, if it is remembered that she had been a full-time employee for many years prior to September 1976, it is neither fair nor reasonable to treat her as an inherently and permanently part-time employee because she was required to work reduced hours at that time. Moreover, she was not awarded compensation for the time between November 16, 1976 and September 1, 1977 in which she worked an average 4-hour day. The evidence established without contradiction, however, that employee wanted to work full time when offered the opportunity by relator in September 1977 and had to refuse it because the additional impairment she had sustained to her back by November 16, 1976, made it impossible for her to perform the work. Beyond question she has sustained a reduction in her earning capacity due to work-related injury and is therefore entitled to temporary partial disability benefits. *See* Minn.Stat. § 176.021, subd. 3 (1980).

■ Relator next urges that employee's average daily wage for the purpose of temporary partial disability compensation should have been determined simply by her earnings between September 1976 and November 16, 1976, the date of her second injury. Relator argues, as did the dissenting members of the Court of Appeals, that employee in fact had a different job beginning in September 1976. They would construe section 176.011, subd. 3, as permitting inclusion of employment prior to that time only if employee had done identical work and if that employment had also been part time or had brought her a daily wage which was irregular or difficult to determine. With respect to the first point, employee's tasks both in the 17 weeks preceding the end of the school year in June 1976 and in the fall of that year were broadly similar. Both dealt with some aspect of the food service provided by relator in its schools, and employee's job classification was not altered by the transfer even though her hours were reduced and her wage was slightly increased. It is true that in *Podratz v. Cross Keys Motel*, 300 Minn. 360, 220 N.W.2d 352 (1974), we said that an employee's past employment, in which he had done other types of work for other employers, could not be considered. Here, employee's past employment, doing essentially like work for the same employer, was properly utilized in an effort to "arrive at a

438

fair approximation of * * * probable future earning power which has been impaired or destroyed because of the injury." *Johnson v. D. B. Rosenblatt, Inc.*, 265 Minn. 427, 430, 122 N.W.2d 31, 33 (1963). We agree also that the statutory reference to "the last 26 weeks" was reasonably construed to be the last 26 weeks in which employee was actually employed by relator, without reference to the summer months in which she did not work. Thus, we affirm the determination of the compensation judge and the majority of the Court of Appeals that employee's average work week on the date of her second injury was 35.35 hours.

We cannot agree, however, that those hours were properly multiplied by the hourly wage of $4.16 which employee was receiving on November 16, 1976, to determine her weekly wage at that time. Minn.Stat. § 176.011, subd. 3 (1980) expressly directs that the daily wage "be computed by dividing the total amount the employee *actually earned in such employment in the last 26 weeks,* by the total number of days in which the employee actually performed any of the duties of such employment * * *." (Emphasis added.) The statute thus requires that employee's daily wage be determined by adding her total earnings in the last 17 weeks of the 1975–1976 school year to her total earnings in the 9 weeks prior to her injury in November 1976 and dividing that sum by the total number of days she worked in the 26-week period. Consequently, we reverse the finding that employee's weekly wage on the date of injury was $147.05, the finding computing her weekly temporary partial disability compensation, and the award of such compensation. We remand for computation of employee's daily wage pursuant to section 176.011, subd. 3, findings recomputing her weekly wage and the amount of temporary partial disability compensation to which she is entitled, and entry of an award for such compensation.

Employee is awarded attorneys fees of $400.

Affirmed in part, reversed in part and remanded.