In the Matter of the Claim of ANNA ZIEGLER, Respondent, against P. CASSIDY'S SONS et al., Appellants.

Workmen's Compensation Law — should be liberally applied as to all parties — common-law marriages — award to widow for death of workman to whom she was married by common-law marriage — appeal — question of law as to validity of such marriage survives unanimous affirmance of award by Appellate Division — statutes relating to marriage examined and construed and held that common-law marriages valid before and until the enactment of chapter 339 of the Laws of 1901 were again made valid by the repeal of certain provisions of that statute by chapter 742 of the Laws of 1907.

1. The statutory provision eliminating the application of technical rules under the Workmen's Compensation Law is one which is liberally applied in accordance with the spirit of the provision for the protection of claimants against technicalities in the trial of claims, and equal justice requires that it should be so applied as to permit to a defendant consideration of a substantial question, which has been fairly raised, although not by methods necessary in an ordinary action.

2. A claimant for compensation under the Workmen's Compensation Law alleged that she was the widow of the man who was killed, by reason of a common-law marriage between them in 1909. The defense was that the marriage was invalid, and that she was

not his widow.  The commissioners announced they had reached the conclusion that a so-called common-law marriage was valid, and heir award was expressly based upon the advice of counsel to that effect, and counsel for the defendant then and there gave notice of his intent to appeal from that determination.  The Appellate Division unanimously affirmed the award.  Under these circumstances a question of law was raised as to the validity of the marriage for the consideration of this court, which survives the affirmance.

3. Statutes may regulate the mode of entering into the marriage contract, but they do not confer the right.  Hence they are not within the principle that, where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive.  The presumption is that a statute was not intended to take away a common-law right unless that intention is plainly expressed.

4. Marriages ought not to be pronounced invalid, and children illegitimate, under a statute, unless in accordance with the strict letter of the statute that purpose is made plain and unmistakable.

5. Prior to the enactment of chapter 339 of the Laws of 1901, a common-law marriage, that is: a contract of marriage, made *per verba de præsenti* and evidenced by cohabitation and various other acts and not effectuated by any formal solemnization, was valid in this state.

6. Section 2 of chapter 339 of the Laws of 1901, amending section 11 of chapter 272 of the Laws of 1896, and providing that a marriage must be solemnized by certain persons and officials or by a contract executed in a prescribed manner, will not be construed as mandatory but as directory, or as prescribing the essential requirements of a formal solemnization of a marriage such as may be necessary to secure the benefits of registry, etc., and will not be regarded as invalidating a form of marriage contract otherwise valid, in the absence of some provision expressly declaring or necessarily implying that result.  But common-law marriages were expressly prohibited and made invalid by section 6 of such statute.

7. After the adoption of chapter 339 of the Laws of 1901 common-law marriages became and remained invalid unless the law was changed in 1907.  In that year by chapter 742 various amendments of the Domestic Relations Law (L. 1896, ch. 272) were adopted.  The sections pertaining to the solemnization of marriages, formulated in 1901, were not materially changed.  Various sections, however, were repealed, and amongst these was section 6 adopted in 1901 prohibiting, and declaring void, marriages contracted otherwise than in the manner prescribed by the article containing that section, and when such prohibition was repealed the law originally

prevailing again came into operation and common-law marriages became valid. Hence the common-law marriage of claimant in 1909 is lawful and claimant is entitled to the award as the widow of decedent.

*Matter of Ziegler* v. *Cassidy's Sons,* 171 App. Div. 959, affirmed.

(Argued October 9, 1916; decided February 27, 1917.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 1, 1915, affirming an award of the state workmen's compensation commission.

The facts, so far as material, are stated in the opinion.

*Bertrand L. Pettigrew* and *Walter L. Glenney* for appellants. On October 23, 1909, common-law marriages were illegal in this state. (L. 1909, ch. 19, §§ 11, 13, 25; *Pettit* v. *Pettit,* 105 App. Div. 312.)

*Frank A. Spencer, Jr.,* for respondent. In October, 1909, common-law marriages in this state were valid. (*Matter of Hinman,* 147 App. Div. 452.)

*Egburt E. Woodbury, Attorney-General* (*E. C. Aiken* of counsel), for state industrial commission. On October 23, 1909, common-law marriages were legal in this state. (*Meister* v. *Moore,* 96 U. S. 76; *Matter of Hinman,* 147 App. Div. 452.)

HISCOCK, Ch. J. The decedent, John Ziegler, was killed while in the employment of the defendant employer in a class of work and under circumstances which entitled his widow, if one were left, to compensation under the Workmen's Compensation Law. The respondent, Anna Ziegler, filed a claim for such compensation, alleging that she was such widow, and the principal controversy on the hearing before the commission arose over this claim of widowhood. The commission made what we regard as a

finding of fact that the decedent "left him surviving his widow, Anna Ziegler, the claimant herein," and, inasmuch as the award based upon such finding has been unanimously affirmed, we should be precluded from passing on its correctness if there were nothing more. The record, however, presents other features which require us in the first place to determine a question of practice involved in the hearing before the commission.

The record discloses that on the first hearing before the commission this claim was dismissed on the ground that there was no evidence of a valid marriage by claimant to decedent. On the second hearing the commissioners announced that as the result of further consideration they had reached the conclusion that a so-called common-law marriage, which had existed, was valid and their award was expressly based upon the advice of counsel to that effect, and counsel for the defendant then and there gave notice of his intent to appeal from said determination. The query is whether under such circumstances a question of law was raised which survives the unanimous affirmance by the Appellate Division for consideration by this court. We think that we should hold that there was.

The question whether or not a common-law marriage was valid at the time when claimant alleges that she was married to decedent is a very substantial one, and its answer is not entirely free from doubt. The Workmen's Compensation Law (Cons. Laws, ch. 67) expressly provides that a hearing before the commission of such a claim "shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure." There was no way in which defendant's counsel could compel the commission in any more formal way than it did to rule upon this question. He was not entitled to require a finding of fact or a conclusion of law which would present it, and a formal exception was not required or contemplated. Everything was done that was necessary plainly to present the question, and apparently every one inter-

ested thought it was being presented, and the commissioners ruled on it. Under these circumstances we think that what was said by them amounted either to a ruling upon the law, or a finding of fact that the marriage between the parties was a common-law marriage, and that the question thus involved was one of law which was sufficiently raised and survives the unanimous affirmance. The statutory provision eliminating the application of technical rules is one which has been and ought to be liberally applied in accordance with the spirit of the provision for the protection of claimants against technicalities, and equal justice requires that it should be so applied as to permit to a defendant consideration of a substantial question like the present one which has been raised as this one was in the only way open to him.

Adopting the view that the question was raised and is presented whether in 1909 when claimant's alleged marriage took place a so-called common-law marriage was valid, we pass to the consideration of that question for the purpose of determining whether the commission was in error in holding that it was thus valid.

Ever since the Revised Statutes were adopted in 1827 it has been provided by statute that marriage in this state should be regarded as a civil contract. The present statutory provision upon that subject is: "Marriage, so far as its validity in law is concerned continues to be a civil contract, to which the consent of parties capable in law of making a contract is essential." The statutes upon this subject simply declare what was the prior common law in this state. (*Fenton* v. *Reed*, 4 Johns. 52.)

It is undisputed, and, therefore, the proposition need not be supported by review of statutes or citation of authorities, that prior to 1901 a common-law marriage, that is, a contract of marriage made *per verba de præsenti* and evidenced by cohabitation and various other acts and not effectuated by any formal solemnization, was valid in this state.

In 1901 this law was changed by important statutory enactments. Chapter 339 of the Laws of that year amended section 11 of chapter 272 of the Laws of 1896 relating to marriages by entitling the section "How a marriage must be solemnized," and providing that "A marriage must be solemnized by either" certain persons there enumerated, including clergymen, municipal officials and various judicial officers, or by a written contract of marriage signed by the parties and witnessed as therein provided, and which contract it was provided should be filed within a given time in the office of the clerk of the town or city in which the marriage was solemnized, and certain benefits in the way of registration and otherwise were secured to parties entering into a marriage contract in one of the methods there prescribed.

Because this statute used the mandatory word "must" in prescribing the manner in which a marriage should be solemnized, it is argued that it thereby made it imperative that, with the exceptions specifically made in the statute, marriage should be solemnized in one of the enumerated methods and in effect prohibited and rendered invalid any other form of marriage contract including common-law marriages. I do not so interpret the statute.

In the first place, I think that the great weight of authority is to the effect that such a statute will be regarded as directory or as prescribing the essential requirements of a formal solemnization of a marriage such as may be necessary to secure the benefits of registry, etc., and will not be regarded as invalidating a form of marriage contract otherwise valid, in the absence of some provision expressly declaring or necessarily implying that result. It is true that the statutes which were being construed in some of the cases cited below did not employ words which in ordinary usage would be regarded as so mandatory as those employed in the statute which I have quoted, but I think that the rule which on the whole

is sustained by the authorities rises above this difference in the language of different statutes and is applicable to our statute. (*Darling* v. *Dent*, 82 Ark. 76; *Askew* v. *Dupree*, 30 Ga. 174; *Teter* v. *Teter*, 101 Ind. 129; *Pegg* v. *Pegg*, 138 Iowa, 572; *Renfrow* v. *Renfrow*, 60 Kan. 277; *Hutchings* v. *Kimmell*, 31 Mich. 126; *State* v. *Worthington*, 23 Minn. 528; *Gibson* v. *Gibson*, 24 Neb. 434; *Carmichael* v. *State*, 12 Ohio St. 553; *Matter of McCausland's Estate*, 213 Penn. St. 189; *Becker* v. *Becker*, 153 Wis. 226.)

It is impossible within reasonable limits to quote at length from these cases, but the rule is fairly stated in the case of *Meister* v. *Moore* (96 U. S. 76, 78) and from the opinion in that case the following language may be quoted: "Marriage is everywhere regarded as a civil contract. Statutes in many of the States, it is true, regulate the mode of entering into the contract, but they do not confer the right. Hence they are not within the principle, that, where a statute creates a right and provides a remedy for its enforcement, the remedy is exclusive. No doubt, a statute may take away a common-law right; but there is always a presumption that the legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwith-

standing the statutes, unless they contain express words of nullity.   *   *   *   In most cases, the leading purpose is to secure a registration of marriages, and evidence by which marriages may be proved; for example, by certificate of a clergyman or magistrate, or by an exemplification of the registry."

But in the second place, if any doubt otherwise arose concerning the interpretation to be given to the section which has been quoted it seems to me that this doubt would be dissipated by a subsequent section enacted as part of the same chapter.   This section provided: " No marriage claimed to have been contracted on or after the first day of January, nineteen hundred and two, within this state, otherwise than in this article provided, shall be valid for any purpose whatever," (L. 1901, ch. 339, section 6) with the provision, however, that no marriage which parties attempted to contract under the statute should be deemed or adjudged to be invalid, on account of any want of authority in any person solemnizing the same if consummated with a full belief on the part of the persons so married, or either of them, that they were lawfully joined in marriage, or be invalidated on account of certain other mistakes in the written contract provided for in the section heretofore quoted.   This enactment, of course, expressly prohibited common-law marriages.

When we interpret these sections of the same statute with reference to each other as we are bound to, it seems to be perfectly plain that the first section quoted was adopted by the Legislature with a complete understanding of the rule that that section by itself simply provided forms of observance which would be necessary in case of a ceremonial or formal marriage contract and that it did not invalidate other forms of marriage; that in order to do that it was necessary to adopt an express prohibition of such other forms of marriage contract and, therefore, the later section was adopted complying with the rule.

Not only does this interpretation of the statute give the Legislature credit for an accurate comprehension and application of what I regard as a general rule upon this subject, but an opposite interpretation of the statute convicts it of doing an unnecessary and foolish thing. The section forbidding and invalidating common-law marriages was an absolutely new section expressly formulated for the purpose of being placed in the statutes at that time. If it be true that the prior section pertaining to the solemnization of marriages was in fact mandatory and exclusive, then the enactment of the second section was an entirely futile step, and of such idle action we should not suspect the legislature unless compelled so to do.

After the adoption of the statute in 1901 concededly common-law marriages became and remained invalid unless the law was changed in 1907.

In that year by chapter 742 various amendments of the Domestic Relations Law were adopted. The section pertaining to the formal solemnization of marriages, formulated in 1901, was not materially changed so far as the present discussion is concerned. Various sections, however, were repealed, and amongst these was the section adopted in 1901 prohibiting and declaring to be void marriages contracted otherwise than in the manner prescribed by the article containing such section. By this repeal not only was wiped out the statutory enactment against common-law marriages, but also there was erased the provision contained in said section and already quoted providing that marriages attempted to be solemnized in the statutory manner should not be rendered null and void because of honest mistakes of the parties in respect of the character of the person presuming to perform the marriage or because of certain failures to comply with the statute in reference to written contracts. Various supplementary sections were also adopted providing for the issuance of licenses and pertaining to the filing of licenses, certifi-

cates of marriage, etc., which we do not think change the complexion of the question before us.

The inquiry then arises as to the effect of this repeal of the prohibitory section, and we think that the answer to that question must be that when such prohibition was repealed the law originally prevailing again came into operation and common-law marriages became valid. (*Mathewson* v. *Phœnix Iron Foundry*, 20 Fed. Rep. 281; *State ex rel. Whitcomb* v. *Otis*, 58 Minn. 275, 278; *State* v. *Mines*, 38 W. Va. 131; *Insurance Co.* v. *Barley*, 16 Grat. [Va.] 363, 384; *Baum* v. *Thoms*, 150 Ind. 378.)

This view is strengthened both from a legal and from a practical standpoint by certain special considerations. As throwing much light upon legislative intention we are to keep in mind that when this prohibition was repealed, the remaining provisions of the statute bearing upon this question were left in substantially the same form as in 1901 and when, as has already been pointed out, the legislature did not regard such provisions sufficient to forbid common-law marriages without an express prohibition.

Then, the provision that "Marriage, so far as its validity in law is concerned, continues to be a civil contract," was allowed to remain in the statute, and after the repeal in question there was no prohibition against that method of entering into marriage as such a civil contract which had been recognized as valid and effective in the absence of prohibition.

Again, if by the repeal of the prohibitory section the validity of other forms of marriage contract than those expressly prescribed by the statute was not restored, we have it that attempted marriages under the statutory provisions were not saved from the destructive effect of innocent or inadvertent failures to comply with the statutory requirements, because the saving clause against such effects which had been inserted in the same section with the prohibition was repealed with it. It can hardly be

believed that the legislature intended to make the statute regulating marriage exclusive and not at the same time afford some relief from such innocent failures as have been mentioned.

Our attention is called to three provisions in the statute pertaining to marriages as tending to establish the contention that a contract of marriage entered into in any manner other than is there prescribed or recognized is invalid. These provisions are the ones, *first*, that a written contract of marriage authorized by the statute "must in order to be valid be acknowledged before a judge of a court of record;" *second*, that the provisions of the statute so far as they relate to the manner of solemnizing marriages "shall not affect marriages among the people called Friends or Quakers, nor marriages among the people of any other denominations having as such any particular mode of solemnizing marriages; but such marriages must be solemnized in the manner heretofore used and practiced * * * and marriages so solemnized shall be as valid as if this article had not been enacted;" and, *third*, that marriages shall not be ren dered void by the failure to procure a license of marriage as required by the statute.

I do not believe that these provisions carry a necessary implication that a marriage contracted otherwise than as in the statute provided is void, but that under a reasonable interpretation they simply pertain to a marriage formally solemnized or contracted in the statutory form and are intended to regulate the celebration of such a marriage and to provide what must or in certain cases need not be done if a person desires to secure the benefit of a marriage solemnization or contract under the statute. This was the interpretation given in the *Meister Case* (*supra*) to a provision in a Michigan statute somewhat similar to the one in our state relating to marriages contracted by Quakers or Friends, and the court refused to affix to such clause any such meaning as is here con-

tended for by the defendants as excluding the validity of any other than the statutory form of marriage solemnization.

And lastly our attention is called to the fact that whereas the statute as it was written in 1896 contains a clause providing that it did not "require" any marriage to be solemnized in the manner therein specified and that "a lawful marriage contracted in the manner heretofore in use in this state" should be valid, the present statute does not contain any such clause recognizing the validity of common-law marriages. This provision in the statute of 1896 was of course properly stricken out in 1901 when the amendment was made expressly prohibiting common-law marriages. When in turn in 1907 the section prohibitory of common-law marriages was repealed, and as we think the validity of such marriages revived, it would have been proper enough to have restored the provision contained in the statute of 1896 recognizing the validity of such marriages. We do not, however, regard the failure to do this as of much consequence. We are forced to recognize that we are confronted by a piece of legislation which is not in all respects scientifically and plainly expressed and that under any exacting test which may be applied to it, provisions and reasons will be found pointing either toward or away from any answer which can be made to the question before us. Under such circumstances we are forced to weigh opposing arguments and it seems to us that the repeal in 1907 of the prohibition of common-law marriages and of the clause saving formal marriages attempted under the statute where there had been some inadvertent and innocent omission to comply with the statute from the possible condemnation of invalidity which followed if common-law marriages were invalid, furnishes a much weightier argument in favor of the construction being adopted by us than is supplied against such construction by the feature just considered. It is difficult to grasp a supposed legislative intent to prohibit a given act,

which is said to be expressed by the repeal, without making any plain substitute therefor, of an existing provision adopted a short time before forbidding such act.

If that aspect were open to us we should not fail to appreciate that troublesome considerations of policy are involved in the decision of the question now before us. On the one hand it will be argued that alleged common-law marriages, if such marriages are permitted, are liable to become the basis of fraud and blackmail, especially after the death of one of the parties. On the other hand, it may be urged that if such marriages are not recognized it will happen that the disgrace of an unlawful union or of illegitimacy will be inflicted upon unsuspicious women who have believed themselves to be lawfully married, and upon innocent children. Especially it may be urged that if the validity of other than statutory marriages be denied, it will happen that because of the repeal of the provision of the act of 1901 saving from illegality because of some innocent or inadvertent mistake marriages attempted to be consummated in accordance with the provisions of the statute, many marriages may be rendered void or voidable because of a perfectly innocent and inconsequential omission to comply with the statute.

Of course it is for the legislature to determine which argument is the more potent and which policy is the wiser. But certainly if that body deems it wise and best to affix the stamp of illegality upon every marriage contracted or solemnized otherwise than in accordance with the strict letter of the statute that purpose should be made plain and unmistakable. The courts ought not to be asked to pronounce marriages invalid and children illegitimate under a statute unless it has plainly decreed and foretold those consequences, and people ought not to be penalized in such matters as those by adoption of guesswork and conjecture as a method of statutory interpretation by which to accomplish such result.

The views which we entertain in respect of the question now presented to us are similar to those reached in *Matter of Hinman* (147 App. Div. 452) and which is the only decision by any appellate court of this state on the question.

In view of the conclusions reached it was not error for the industrial commission to make the award in this case, and the order appealed from should be affirmed, with costs.

CHASE, CUDDEBACK and POUND, JJ., concur; COLLIN, HOGAN and CARDOZO, JJ., dissent.

Order affirmed.