## THELMA JOHNSON v. D. B. ROSENBLATT, INC., AND ANOTHER.

122 N. W. (2d) 31.

May 24, 1963—No. 38,875.

*Robb, Robb & Van Eps* and *Don James Chantry,* for relators. *Farnes & Skaar,* for respondent.

KNUTSON, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation to petitioner.

Petitioner was employed by relator D. B. Rosenblatt, Inc., on April 20, 1959, as a seamstress. Her contract of hire called for a 5-day week, with wages to be determined on a piecework basis, subject to a guarantee of $1 per hour. She was injured on the first day of the third week that she was employed. No record was kept of the daily output of employee, but earnings were calculated on a weekly basis. She worked 4½ days during the first week and earned a total of $26.55 from her production. She was paid an additional $9.95 to make up the minimum guarantee of $1 per hour. During the second week she worked a full 5 days and earned a total of $40.50, slightly more than the minimum guarantee. On April 20, 1959, the day she was injured, she earned $11.33 from her piecework. She punched the clock that day for 8 hours but testified that she was unable to work at full capacity after her injury. The total of her earnings for the entire period of employment was $88.33.

The referee found that petitioner was employed "at a five day weekly wage (piece work) of $45.60." On appeal to the Industrial Commission, the commission determined that petitioner's weekly wage was $75.60. The commission concluded that petitioner actually worked only 6 hours on the day of her injury. By dividing that number of hours into $11.33, the commission determined that she earned $1.88 per hour and then multiplied that figure by 40 hours for the week.

The only question before us is whether the commission's finding as to the weekly wage finds support in the evidence.

Compensation under our statute is based on the employee's daily wage at the time of the injury, subject to a maximum compensation of $45 per week and a minimum compensation of $17.50 per week. Minn. St. 176.101, subd. 1. Daily wage is defined in § 176.011, subd. 3, as follows:

" 'Daily wage' means the daily wage of the employee in the employment in which he was engaged at the time of injury * * *."

Weekly wage is defined in § 176.011, subd. 18, as follows:

" 'Weekly wage' is arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved, but the weekly wage shall not be less than five times the daily wage. * * *"

There is no criterion or formula expressed in our statute for determining the daily wage of a pieceworker, nor do we find any help in our case law. Where there is no governing statute,[1] the rule generally followed is that the wages of a pieceworker are based on an average determined by dividing the number of days the employee was actually employed into the total amount the employee earned over a period of time preceding the injury.[2] Where the employee is employed for a considerable period of time, this formula probably presents the best solution of the problem if working conditions are normal. Where working conditions are such that the employee cannot perform at full capacity because of conditions over which he has no control, it would seem that some allowance should be made for such interference with normal production.[3] In such case and in cases where the employee has been employed for only a very short period of time, it has been held that the wages the employee could have earned may be gauged by the wages paid to one doing similar work.[4]

---

[1]The statutes of some states contain a formula for determining the daily wage of a claimant. For instance, the statute in the State of New Jersey (N. J. Stat. Ann. § 34:15-37) contains the following provision: "Where prior to the accident, the rate of wages is fixed by the output of the employee, the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six months, or so much thereof as shall refer to employment by the same employer."
See Highway Freight Co. v. Workmen's Comp. Bureau, 125 N. J. L. 168, 15 A. (2d) 272, construing this statute.

[2]See, Annotation, 38 A. L. R. 844; 99 C. J. S., Workmen's Compensation, § 292a.

[3]See, for instance, Lexington Min. Co. v. Richardson, 286 Ky. 418, 150 S. W. (2d) 889; McKinstry v. Guy, 116 Kan. 192, 225 P. 743, 38 A. L. R. 837; 58 Am. Jur., Workmen's Compensation, § 284.

[4]Morgan v. Nelms, 5 La. App. 414; Matter of Shaw v. American Body Co. 189 App. Div. 365, 178 N. Y. S. 369.

The ultimate object of our search is to arrive at a fair approximation of petitioner's probable future earning power which has been impaired or destroyed because of the injury. In 2 Larson, Workmen's Compensation Law, § 60.11, we find the following statement of the rule:

"The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis."

The terms "future earning capacity" or "future earning power" frequently found in the decisions, in a case involving a pieceworker, must be considered in the light of what the employee probably would earn daily under normal working conditions and not necessarily what she could earn if working at full capacity during a test period comprising part of a day. The fallacy of the commission's computation here lies in taking a few hours showing the highest earnings and dividing it by the number of hours assumed to have been consumed in productive employment.

While the commission must be granted considerable latitude in determining the amount of wages earned by an injured employee where the compensation or working time is indefinite, its findings cannot rest on pure conjecture. Under Minn. St. 176.411, subd. 1,[5] the commission is not bound by the strict rules of evidence applicable to trials in court,

---

[5]"Except as otherwise provided by this chapter, when the commission, a commissioner or referee makes an investigation or conducts a hearing, it or he is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure. The investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties.

"Findings of fact shall be based upon competent evidence only."

but its findings must be based only on competent evidence.[6] The rules are well stated in Lappinen v. Union Ore Co. 224 Minn. 395, 404, 29 N. W. (2d) 8, 15, 32 Minn. L. Rev. 420, where we said:

"It is too well settled to require citation of authority that the workmen's compensation act should be liberally construed so as to afford coverage of all cases reasonably within its purview. The provisions of § 176.54, to the effect that the commission shall not be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure except as provided in the act, but that 'All findings of fact shall be based *only* upon competent evidence' (italics supplied), sweep away procedural technicalities, to the end that claimants may be afforded the protection intended by the act (Matter of Ziegler v. P. Cassidy's Sons, 220 N. Y. 98, 115 N. E. 471, Ann. Cas. 1917E, 248); but they do not dispense with proof of the employe's claim. On the contrary, they impose upon him the imperative duty of proving his case by 'competent evidence.' Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913. To hold otherwise would amount to taking money from one person and giving it to another without any legal basis for so doing."

If the findings of the commission are unsupported by competent evidence they cannot stand.

There is nothing in this record by way of competent evidence to support the commission's finding that claimant worked only 6 hours during the last day of her employment. She punched the clock for 8 hours of work. The commission relies on the conjectural testimony of claimant herself, which is as follows:

"Q. How long did you actually work that day?

"A. I—at that time until four-thirty or four o'clock, whenever it was time to stop.

"Q. And of that time how much did you actually work?

"A. Well, not very much. I don't know how much.

"Q. Can you give us an estimate?

"A. I imagine I probably put in two good hours, and that's all.

---

[6]See, Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754.

"Q.   In the afternoon?

"A.   That's right.

"Q.   Besides the morning work up until the time of the injury?

"A.   I imagine that. But I can't swear to it, because I'm not sure."

The statement that it is petitioner's future earning capacity that controls, if we mean the maximum an employee could earn if working at top speed, when applied to a case like this is too broad. To take the highest production of an employee during a few hours in the morning of a day, for instance, as a test of actual future production is subject to too many variations to be reliable. It is entirely possible that a pieceworker might produce more in the early hours of the morning when she is fresh than she would later in the day when she begins to tire. There are so many uncertain factors that may affect her production over a whole day's time, and her consequent earnings over a week's time, that to base daily wages on such an inadequate test can hardly be sustained. Here, for instance, petitioner earned by production the sum of $26.55 the first week of her employment, consisting of 4½ days, or an average of $5.90 per day. She claims that her production was reduced by use of a poor machine furnished by her employer. We may assume that to be true. The second week she worked 5 full days. She used the poor machine the first 3 days and earned by production a total of $40.50 for the week. She admits she had a good machine the last 2 days. Assuming that she earned the same per day with the poor machine as she had the previous week, she would have earned $17.70 for the first 3 days. That leaves $22.80 for the last 2 days, or $11.40 per 8-hour day, substantially the same as she earned the last day she worked on the basis of an 8-hour day, instead of an assumed 6-hour day. $11.40 divided by 8 hours would amount to $1.425 per hour, or $57 per 40-hour week. By any reasonable calculation, that is the best result the evidence could possibly sustain.

In Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 270, 71 N. W. (2d) 787, 795, we quoted with approval the following from the California case of Marsh v. Industrial Acc. Comm. 217 Cal. 338, 344, 18 P. (2d) 933, 936, 86 A. L. R. 563, 567:

"* * * The object is to make amends for a disability attributable to

the employment, and the test is whether there is an incapacity causing loss of earning power in whole or in part."

The best way to determine earning power or, for that matter, earning capacity, as the term is used in workmen's compensation litigation, of a pieceworker is to examine the actual production of the employee over a period of time in the past. It can hardly be determined fairly by taking one hour or a few hours when the employee timed herself while working at maximum capacity. Many variable factors may diminish production over a period of time. Earning power in a case such as this must of necessity be equated with a desire or ability to work at full capacity for the entire time. The best criterion is past performance over a period of time where that evidence is available. At least, past performance cannot be wholly ignored. If evidence of such performance is not available because of the limited time of employment, other evidence to determine the probable productive capacity of the employee may be used. But in this case there is neither competent evidence of what others might earn or what petitioner earned, aside from the amount she earned on this job. In view of that situation, the entire time that she worked *under normal conditions,* at least, must be given consideration. Due allowance may be made for conditions over which petitioner had no control. If no other evidence is available, her daily wages should be determined by considering all the time during which she worked under normal conditions.

The case is remanded to the Industrial Commission to redetermine petitioner's daily wage. If no further evidence is available, such determination should be made by consideration of the amount earned during all the time when petitioner worked under normal conditions.

Reversed.