**John KNOTZ, Respondent,**

v.

**VIKING CARPET, Relator.**

**No. C0-84-847.**

Supreme Court of Minnesota.

Feb. 8, 1985.

William M. Drinane, St. Paul, for relator.

Michael S. Polk, Hastings, for respondent.

Craig D. Peterson, St. Paul, for Farmers Ins. Group.

KELLEY, Justice.

On March 8, 1982, employee John Knotz, President of Viking Carpet, sustained injuries which arose out of and in the course of his employment. The compensation judge found, that these injuries resulted in temporary total disability and specified permanent partial disabilities, and these findings are not challenged here. The compensation judge also found that employee was earning a weekly wage of $30.76 on the date of injury and awarded compensation based on that sum. On employee's appeal, the Workers' Compensation Court of Appeals set aside that finding and the order awarding compensation based thereon, and remanded the case so that the compensation judge could "determine, based upon all offered and available evidence, the fair measure of earnings and wage in order to determine the employee's compensation rate." The employer-insurer sought review, contending that the decision of the compensation judge was correct. We disagree and affirm the vacation of his finding and determination of the compensation due employee. We reverse, however, the order for remand because we have concluded, as did the dissenting member of the WCCA, that the evidence already in the record establishes that employee was earning a weekly wage of $200 at the time of injury.

The facts bearing on this issue are not in dispute. In April 1980, after several years of employment as a carpet layer, employee and two friends incorporated Viking Carpet to perform carpet installation. Employee, the president of the firm, had earned $4,000 to $5,000 in the first 3 months of 1980 while self-employed and in the rest of the year received wages of $12,932. In 1979, he had had earnings of $26,000 for the same kind of work. In March 1981, Viking Carpet's business was expanded to operate a retail store. The expansion met with disagreement from the original incor-

porators and they withdrew. Employee's brother Dan then became an officer of the corporation and, subsequently, both brothers worked full time in the business. Employee kept the business records and also spent about 7 hours a day installing carpets, normally working a 5-day week.

The retail store was not profitable, and the brothers plowed back into the corporation the money it received for installing carpets. Dan drew no wages in 1981; employee drew $800 during the last 3 months of that year, but nothing during the first 3 months of 1982. Because of employee's disability following the accident, the corporation was unable to carry on and ceased doing business April 30, 1982.

Other evidence presented by employee bearing on the issue of his wages included minutes of a corporate meeting held in January 1982 at which the brothers agreed:

> The two officers will divide any profits 50/50 above the expenses of the corporation.

> John Knotz is to provide the financing and work approximately a 40 hour week; Dan Knotz is to work a 55 hour week. Each officer is to draw $200 per week for 1982, provided if in September, 1982 and thereafter there are not [sic] sufficient sums available. John Knotz will receive $200 per week and Dan such lesser sum as is available for wages.

Employee also established through the testimony of his insurance agent that Viking Carpet's estimated compensation policy premium had anticipated that corporate officers would each receive remuneration of $15,600 a year. Objection to evidence of the wages paid nonunion carpet layers at the time of the employee's accident was sustained, and employee made an offer of proof that the wage was approximately $16 an hour.

The compensation judge recognized that the $800 actually received by employee in the 6-month period prior to the automobile accident was not representative of his earning capacity, but concluded that Minn.Stat. § 176.011, subd. 3 (1984) required him to

consider "actual wages paid" rather than employee's earning capacity. This statute provides in part:

"Daily wage" means the daily wage of the employee in the employment in which he was engaged at the time of injury * *. If the amount of the daily wage *received or to be received by the employee* in the employment in which he was engaged at the time of injury was irregular or difficult to determine, or if the employment was part time, the daily wage shall be computed by dividing the *total amount the employee actually earned* in such employment in the last 26 weeks, by the total number of days in which the employee actually performed any of the duties of such employment, * * *.

Minn.Stat. § 176.011, subd. 3 (1984). (Emphasis added). Following his interpretation of this provision, the compensation judge divided the $800 received by employee during the 26-week period prior to his injury by 130, the number of days he had worked, and then multiplied that result by 5, pursuant to Minn.Stat. § 176.011, subd. 18 (1984), thereby obtaining the weekly wage of $30.76.

▮ All members of the WCCA panel considering employee's appeal agreed, as do we, that the compensation judge erroneously construed section 176.011, subd. 3, as requiring that he could consider only the $800 employee actually received in his employment during the preceding 26 weeks. The language of this provision does not justify that construction. It does not refer to "actual wages paid." Instead, the statute directs that if an employee's wage is irregular or difficult to determine, it is to be computed by dividing "the total amount the employee actually earned" by the total days he worked in the 26 weeks prior to his injury. The focus is on what an employee was earning rather than what he received for his work. Nor does the purpose of the statutory provisions for wage calculation justify using what an employee is actually paid, when that differs from what he has earned, to determine his daily and weekly wages. The object of wage determination is to "arrive at a fair approximation of [the employee's] probable future earning power which has been impaired or destroyed because of the injury." *Sawczuk v. Special School Dist. No. 1,* 312 N.W.2d 435, 437–38 (Minn.1981), *citing, Johnson v. D.B. Rosenblatt, Inc.,* 265 Minn. 427, 430, 122 N.W.2d 31, 33 (1963). The compensation judge's finding and consequent computation of compensation did not comply with Minn.Stat. § 176.011, subd. 3 (1984).

▮ However, there is no need for further evidence because the corporate minutes clearly disclose a contract of employment between the corporate employer and employee under which he was entitled to a weekly wage of $200 during 1982. In light of this evidence, and employee's testimony that he worked a 5-day week, employee's daily wage was neither irregular nor difficult to determine. Thus, the statutory formula set forth in section 176.011, subd. 3, is not applicable. That being true, evidence about employee's past earnings, the compensation policy premium, and the amount of money received by employee in the 26 weeks prior to his injury was not required, nor is the remand for additional evidence. Consequently, we reverse that part of the WCCA decision remanding the case for a further hearing and direct entry of a finding that employee's weekly wage at the time of his injury was $200 and an award of compensation based thereon.

Employee is awarded $400 in attorney fees.

Affirmed in part, reversed in part, and remanded.