**Christopher BERRY, Relator,**

v.

**(1) WALKER ROOFING COMPANY, (1) Home Insurance Company, (2) Daak Construction Company, (2) Farm Bureau Mutual Insurance Company, and (3) Special Compensation Fund, Respondents.**

**No. C5–91–166.**

Supreme Court of Minnesota.

Aug. 9, 1991.

### ORDER

James E. Hart, Harold Sadoff & Assoc., Minneapolis, for relator.

Elise M. Colosey, Peahl & Day, Minneapolis, for Walker Roofing Co. and Home Ins. Co.

Gerald Linnihan, Michael A. Rayes, Jardine, Logan & O'Brien, St. Paul, for Daak Const. Co. and Farm Bureau Mut. Ins.

Danny P. Kelly, St. Paul, for Special Compensation Fund.

Heard, considered and decided by the court en banc.

WAHL, Justice.

Employee Christopher Berry seeks review, by writ of certiorari, of the decision by the Worker's Compensation Court of Appeals affirming the compensation judge's calculation of his average weekly wage. Though we reverse in part the basis of decision, we find no miscalculation.

On April 25, 1988 Employee, 34, an experienced roofer, commenced employment as a roofer with Daak Construction. Only hours after beginning work, Berry fell from a roof at his job site and suffered neck and back injuries. His injuries resulted in medical restrictions that made it impossible for him to return to his previous employment as a roofer. Daak's insurer, Farm Bureau Mutual, admitted liability and commenced payment of temporary total disability payments based on a pre-injury average weekly wage of $300.

Berry filed a claim petition alleging a pre-injury average weekly wage of $480 and corresponding underpayment of benefits. He argued that, because he was a construction worker, his average weekly wage should be determined by calculating his daily wage and multiplying it by five pursuant to Minn.Stat. § 176.011, subd. 3. He also contended that his daily wage could be extrapolated from his performance during the few hours he worked for Daak prior to his injury.

The compensation judge rejected both claims. She determined that Berry had failed to prove that he was engaged in employment where the hours of work are affected by "seasonal conditions" as required by the statute and that there was inadequate evidence from which to extrapolate Berry's actual wage-earning capacity. She therefore calculated Berry's weekly wage by averaging the weekly wages of three of Berry's co-worker's at Daak who were employed doing similar work. Em-

ployee's weekly wage was determined to be $315.82 resulting in a base compensation rate of $210.55 per week. Berry appealed and the WCCA affirmed the decision of the compensation judge with respect to wage calculation.

Berry raises two issues on appeal: (1) Whether the weekly wage for an employee in the construction industry is, as a matter of law, calculated at not less than five times the daily wage under Minn.Stat. § 176.011, subd. 3, without additional proof that the employee's particular employment is in an industry where hours of work are affected by seasonal conditions, and (2) whether the compensation judge properly calculated the employee's average weekly wage based on the earning records of other employees engaged in similar work when the employee had only worked for a fraction of one day prior to the injury giving rise to compensation.

■ 1. In Minnesota, worker's compensation wage loss benefits are generally determined by calculating two-thirds of the "average weekly wage." Minn.Stat. § 176.-101, subd. 1 (1990). In most cases, weekly wage is determined by multiplying the daily wage by the number of days normally worked in the business of the employer. Minn.Stat. § 176.011, subd. 18. The Worker's Compensation Act contains a special provision, however, that "... in the case of the construction industry, mining industry, or other industry where the hours of work are affected by seasonal conditions, the weekly wage shall not be less than five times the daily wage." Minn.Stat. § 176.-011, subd. 3. In essence, the legislature imputes a full time wage basis to workers in certain industries. The parameters of that imputed full-time wage provision are in dispute here.

Berry was employed as a roofer at the time of the injury and neither party disputes that roofing is a part of the construction industry. He contends that because he is a construction worker he is entitled to application of the five-day wage provision as a matter of law without having to prove that his specific employment is "seasonal" in nature.

The decisions of this court and those of the WCCA are not entirely consistent with respect to proper interpretation and application of the full-time wage provision. Some of the cases have appeared to place a burden on the construction worker to prove employment in an industry where "hours of work are affected by seasonal conditions." *See Olsen v. Kling,* 363 N.W.2d 310, 313 (Minn.1985) (affirming application of the provision "in light of uncontroverted testimony that roofing is a seasonal business"); *Czech v. Bernard L. Dalsin Co.,* 43 W.C.C.A. 534, 537 *aff'd without opinion,* 463 N.W.2d 769 (Minn.1990) (substantial evidence supported the finding that, as a roofer for this employer, the employee was engaged in work where hours were affected by seasonal conditions).

Other decisions, however, have indicated that the provision applies as a matter of law. *Bradley v. Vic's Welding,* 405 N.W.2d 243, 245 (Minn.1987) (citing Minn. Stat. § 176.011, subd. 3 in support of assertion that, "In the case of construction workers, the weekly wage may not be less than five times the daily wage."); *Noll v. Ceco Corp.,* 42 W.C.D. 553, 561, *aff'd without opinion,* 450 N.W.2d 579 (Minn.1990) (affirming decision by the compensation judge that Minn.Stat. § 176.011, subd. 3 creates an "unrebuttable [sic] presumption in favor of construction and mining workers," and that "discretion is permitted only with *other industries* allegedly affected by seasonal conditions.")

The plain language of Minn.Stat. § 176.-011, subd. 3 supports Berry's assertion that the provision applies to the construction industry as a matter of law. The statute reads "in the case of the construction industry, mining industry, *or* other industry where the hours of work are affected by seasonal conditions...." Minn.Stat. § 176.011, subd. 3 (emphasis added). The use of the disjunctive rather than the conjunctive denotes legislative intent to apply the seasonal conditions provision to the construction and mining industries as a matter of law and to leave open the possibility of its application to other industries, subject to additional proof that the indus-

try in question is one in which the hours of work are "affected by seasonal conditions." *See generally*, 1A Sutherland *Statutory Construction*, § 21.14 (4th ed. 1985). Any other interpretation would render the enumeration of specific categories meaningless. *See Ford v. Willis J. Kruckeberg Roofing & Sheet Metal*, 308 Minn. 271, 274, 241 N.W.2d 653, 654 (1976). If the legislature had intended employees in any industry to offer case by case proof of this condition, it would have no need to specifically mention any industry. The statute could simply have read "any industry where the hours of work are affected by seasonal conditions." *Id.* at 274, 241 N.W.2d at 654.

We reject Respondent Daak's argument that the legislature intended the full-time wage provision to apply only to industries such as open pit mining that actually cease operations during the winter months and not to industries where hours are made irregular by inclement weather or seasonal slumps. In *Rogers v. Cedar Van Lines, Inc.*, 281 N.W.2d 669 (Minn.1979) on which Daak relies, we addressed the application of the full-time wage provision to the household moving industry, an industry not specifically enumerated in the statute where proof of seasonal conditions is required. Moreover, subsequent cases, both of this court and the WCCA, do not support an interpretation that the provision applies exclusively to employment within industries that shut down for an entire season. The "seasonal conditions" provision has been applied by the WCCA and affirmed without opinion by this court to construction businesses that, like Daak, operate year round but whose work hours are affected by climatic conditions such as rain, snow and extreme cold. *See e.g., Kraljic v. Donnelly Stucco, Inc.*, 43 W.C.D. 164 *aff'd without opinion*, 459 N.W.2d 130 (Minn. 1990); *Noll, supra; Frei v. Comfort Heating & Air Conditioning*, 42 W.C.D. 207 *aff'd without opinion*, 445 N.W.2d 562 (Minn.1989). This analysis comports with the plain language of the statute which requires only that the hours of work be affected by "seasonal conditions," not by the seasons themselves.

We therefore reverse the WCCA and hold that the weekly wage for an employee in the construction industry is, as a matter of law, calculated at not less than five times the daily wage under Minn.Stat. § 176.011, subd. 3, without additional proof that the employee's particular employment is in an industry where hours of work are affected by seasonal conditions.

We note that while our decision on this point clarifies the law, it does not affect the employee's wage calculation in this particular case. As discussed below, the compensation judge calculated Berry's weekly wage by averaging the weekly wage records of three full-time co-employees. The wage determination was therefore based on full-time employment and was roughly equivalent to "five times the daily wage."

■ 2. Because the employee had worked for the employer for less than half a day, the compensation judge, citing *Johnson v. D.B. Rosenblatt*, 265 Minn. 427, 122 N.W.2d 31 (1963), calculated his weekly wage based upon the average weekly earnings of other full-time Daak employees engaged in similar work. In *Johnson*, this court addressed proper wage calculation for a worker who, like Berry, was paid by the piece. There, we stated in dicta that when no evidence of a "pieceworker's" past performance exists, "other evidence" may be used to determine the probable productive capacity of the employee. Specifically, the court noted that "[I]n cases where the employee has been employed for only a very short period of time, it has been held that the wages the employee could have earned may be gauged by the wages paid to one doing similar work." 265 Minn. at 429, 122 N.W.2d at 33. *Accord* 2 Larson, *The Law of Worker's Compensation* § 60.00 (1989) ("The computation of average weekly wage is frequently based upon actual wages during the preceding year, if the claimant's employment has been substantially continuous, and upon the wages of the employees in similar work if it has not.").

The object of wage determination is to "arrive at a fair approximation of [the employee's] probable future earning power which has been impaired or destroyed because of the injury." *Knotz v. Viking Carpet,* 361 N.W.2d 872, 874 (quoting *Sawczuk v. Special School Dist. No. 1,* 312 N.W.2d 435, 437–38 (Minn.1981)). The compensation judge can, of necessity, only use the information that is available. Here, the wage calculation based on the average weekly wage of three co-employee's was more reliable than a speculative extrapolation of Berry's earning capacity based on a few hours of work about which there was conflicting testimony. The co-employees in question were established to be experienced, hard-working roofers and the compensation judge's treatment of their records as those of full time workers was not manifestly contrary to the evidence. In short, the method of calculation used in this case was the most reliable under the circumstances. The compensation judge properly calculated the employee's average weekly wage on the earning records of other employees engaged in similar work when the employee had only worked for a fraction of one day prior to the injury giving rise to compensation.

Affirmed.