Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/06/2018 08:13 AM CST

Aldwin R. Foster-Rettig, appellee, v.
Indoor Football Operating,
L.L.C., appellant.

___ N.W.2d ___

Filed February 20, 2018.    No. A-17-048.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the Workers' Compensation Court's findings, an appellate court considers the evidence in the light most favorable to the successful party. The appellate court resolves every controverted fact in the successful party's favor and gives that party the benefit of every inference that is reasonably deducible from the evidence.

3. **Workers' Compensation: Appeal and Error.** The Workers' Compensation Court's factual findings have the effect of a jury verdict, and an appellate court will not disturb them unless they are clearly wrong.

4. ____: ____. An appellate court independently reviews questions of law decided by a lower court.

5. **Workers' Compensation.** Pursuant to the Nebraska Workers' Compensation Act, the term "wage" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. It shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such

- 552 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

advantages shall have been fixed by the parties at the time of hiring, except that if the workers' compensation insurer shall have collected a premium based upon the value of such board, lodging, and similar advantages, then the value thereof shall become a part of the basis of determining compensation benefits.

6. ____. When determining whether payments for an employee's meals or lodging should be included in a calculation of weekly wages, there must be evidence to demonstrate that (1) the money value of the advantages was fixed by the parties at the time of hiring and (2) the advantages constitute a real and reasonably definite economic gain to the employee.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

James D. Garriott, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Jeffrey F. Putnam, of Law Offices of Jeffrey F. Putnam, P.C., L.L.O., for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Indoor Football Operating, L.L.C. (Indoor Football), appeals from the Nebraska Workers' Compensation Court's award of benefits to Aldwin R. Foster-Rettig. On appeal, Indoor Football asserts that the compensation court erred in calculating Foster-Rettig's average weekly wage. For the reasons set forth herein, we affirm the decision of the compensation court.

## BACKGROUND

On April 28, 2014, Foster-Rettig was playing football for the Omaha Beef football team when he suffered a back injury. As a result of the injury incurred by Foster-Rettig, he was unable to continue to play football and was ultimately placed on an "injured reserve" status by the Omaha Beef football team for the remainder of the season. He remains unable to

- 553 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

play football; however, he has since found employment in a different capacity. Although it is not entirely clear from our record, it appears as though the Omaha Beef football team was owned by Indoor Football and, as such, Foster-Rettig was an employee of Indoor Football when he was playing for the Omaha Beef football team.

Foster-Rettig subsequently filed a claim in the compensation court alleging that he was entitled to disability benefits from Indoor Football as a result of his work-related injury. After a trial, the compensation court entered an award in favor of Foster-Rettig, awarding him both temporary total disability payments and permanent partial disability payments. Indoor Football appeals from the award.

Indoor Football's appeal concerns only the compensation court's calculation of Foster-Rettig's average weekly wage. Accordingly, we focus our recitation of the evidence presented at trial on that evidence which is relevant to the calculation of Foster-Rettig's average weekly wage.

Foster-Rettig testified at trial that when he played for the Omaha Beef football team, he received a weekly salary of between $225 to $250. This salary equated to a payment of $225 per game he played in, with the ability to earn an additional $25 per game if the team won or if Foster-Rettig played particularly well. In addition to this salary, Foster-Rettig testified that he received "room and board" from Indoor Football. In fact, he testified that his receiving "room and board was required" to his playing for the Omaha Beef football team, because he was not from Omaha, Nebraska.

Indoor Football paid for Foster-Rettig to stay at a particular hotel in Omaha 7 days a week during the football season. If he chose not to stay at the hotel on a particular night, however, he did not receive any additional compensation from Indoor Football. Foster-Rettig testified that he never paid anything to stay at the hotel and that he did not know exactly how much his staying at the hotel cost Indoor Football. He did offer into evidence a letter from a local travel agent who estimated that

- 554 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

from March to June 2012, the average nightly rate at that particular hotel was $50.

During the football season, Indoor Football also provided to Foster-Rettig "a stack of meal vouchers" every week so that he could eat three meals a day at local restaurants. Foster-Rettig testified that he would receive at least 21 meal vouchers per week. Some of those vouchers entitled him to a "free meal[]" and others entitled him to spend a specific amount of money on a meal, typically between $10 and $25. Foster-Rettig testified that each voucher would "take[] care" of the cost of a meal. However, he never received any additional money from Indoor Football if he did not use the full amount of a voucher or if he did not use all the vouchers allotted to him. In addition, he never had to return any unused vouchers to Indoor Football. Foster-Rettig offered into evidence a document indicating that the daily meal rates for traveling employees across the country ranged from $46 per day to $69 per day.

At trial, Foster-Rettig alleged that his average weekly wage should include the amount that Indoor Football paid for his lodging and for the value of his meals. To the contrary, Indoor Football alleged that Foster-Rettig's average weekly wage should be calculated based only on his salary of either $225 or $250 per week. Specifically, Indoor Football alleged that based on what Foster-Rettig actually earned while he played for the Omaha Beef football team, his average weekly wage should total $231.25.

In its award, the compensation court calculated Foster-Rettig's average weekly wage to be $903.25. In calculating this amount, the court stated:

> The court finds [Foster-Rettig's] average weekly wage was $231.25 without adding in the per diem of meals and lodging. . . . When adding in $350.00 per week for lodging and $322.00 per week for meals, the average weekly wage of [Foster-Rettig] is $903.25 per week. The Court so finds.

- 555 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

The compensation court went on to explain:

> The Court finds the lodging [Indoor Football] paid on behalf of [Foster-Rettig] should be included in [his] average weekly wage calculation. The Court finds the payment of [Foster-Rettig's] lodging constituted real and definite economic gain to [him]. [Foster-Rettig] had no other home. This hotel was his home. . . . Consequently, the payment of his lodging did not "offset" his costs of travel. . . .
>
> The same is true of the meals paid by [Indoor Football]. [Foster-Rettig] had no wife or child to support. He lived in Omaha. He was not living on the road. The meals that were paid for by [Indoor Football] obviated the need for [Foster-Rettig] to pay for his own meals out of his paycheck. This provided a real and economic gain to [Foster-Rettig].

The compensation court then calculated the amount of disability benefits owed to Foster-Rettig by utilizing its calculation of his average weekly wage.

Indoor Football appeals from the compensation court's award.

### ASSIGNMENT OF ERROR

On appeal, Indoor Football asserts that the compensation court erred in calculating Foster-Rettig's average weekly wage.

### STANDARD OF REVIEW

[1-4] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). In testing the sufficiency of the evidence to support the Workers'

- 556 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

Compensation Court's findings, an appellate court considers the evidence in the light most favorable to the successful party. *Id.* The appellate court resolves every controverted fact in the successful party's favor and gives that party the benefit of every inference that is reasonably deducible from the evidence. *Id.* The Workers' Compensation Court's factual findings have the effect of a jury verdict, and an appellate court will not disturb them unless they are clearly wrong. *Id.* An appellate court independently reviews questions of law decided by a lower court. *Id.*

## ANALYSIS

On appeal, Indoor Football alleges that the compensation court erred in calculating Foster-Rettig's average weekly wage. Specifically, Indoor Football alleges that the court erred in including in its calculation estimates of what Indoor Football spent on meals and lodging for Foster-Rettig when he was employed as a football player. Upon our review, we find that the compensation court did not err in its calculation of Foster-Rettig's average weekly wage. Accordingly, we affirm the decision of the compensation court which calculated Foster-Rettig's average weekly wage to be $903.25 per week.

[5] Neb. Rev. Stat. § 48-126 (Reissue 2010) defines how to calculate a person's wages for the purpose of determining workers' compensation benefits. Section 48-126 provides, in relevant part:

Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. It shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring, except

- 557 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

that if the workers' compensation insurer shall have collected a premium based upon the value of such board, lodging, and similar advantages, then the value thereof shall become a part of the basis of determining compensation benefits.

The first case which addressed the issue before us is *Maryland Casualty Co. v. Geary*, 123 Neb. 851, 244 N.W. 797 (1932). In that case, George Geary was employed by a company as a truckdriver. Geary's weekly wage "was $10 a week, plus the cost of his meals and lodging while he was employed." *Id*. at 854, 244 N.W. at 798. The record revealed that the cost of Geary's meals and lodging was at least $12.50 per week. On appeal, the employer argued that the meals and lodging provided to Geary should not be considered a part of his weekly compensation "because the money value of these items was not fixed at the time of hiring." *Id*. In support of this argument, it cited to § 48-126.

In the opinion, the Nebraska Supreme Court analyzed the language of § 48-126 to determine whether the cost of Geary's meals and lodging should be included in a calculation of his weekly wage. Specifically, the court examined the following statutory language: "'[T]he term "wages" . . . shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring.'" *Maryland Casualty Co. v. Geary*, 123 Neb. at 854, 244 N.W. at 798. The court then stated, "Were it not for the statutory limitation above quoted, there would be no doubt that the meals and lodging furnished by the employer would constitute a part of the employee's weekly wage." *Id*. The court went on to consider that the value of Geary's meals and lodging was not specifically fixed by the parties at the time of his hiring. Instead,

> [Geary] was required to obtain his meals at various
> cafes, restaurants and hotels, and his lodging at various

- 558 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

hotels and boarding houses. Neither the employer nor the employee could know what the precise amount would be until such items were furnished to the latter. Whatever the cost of these items was, they were within the contemplation and agreement of the parties.

*Id*. at 855, 244 N.W. at 798.

Ultimately, the court found, "[A] liberal interpretation of [§ 48-126] requires us to hold that the cost of meals and lodging was a part of the compensation which [Geary] received." *Maryland Casualty Co. v. Geary*, 123 Neb. at 855, 244 N.W. at 799. The court explained:

In this case, the cost of the meals and lodging was capable of being, and actually was, rendered certain. The money value of the meals and lodging was fixed at the time of hiring. [Geary] furnished weekly a sheet on which these items were listed, and he was reimbursed therefor.

*Maryland Casualty Co. v. Geary*, 123 Neb. 851, 855, 244 N.W. 797, 798-99 (1932). In reaching its conclusion, the court cited to the beneficent purposes of the workers' compensation law. *Maryland Casualty Co. v. Geary, supra*.

[6] In a subsequent case which raised the issue of whether payments for meals or lodging should be included in a calculation of weekly wages, the Supreme Court interpreted the statutory language of § 48-126 to require evidence to demonstrate that (1) the money value of the advantages was fixed by the parties at the time of hiring and (2) the advantages constitute a real and reasonably definite economic gain to the employee. See *Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212 (1949).

Here, there is no question that the meals and lodging provided to Foster-Rettig as a part of his employment constituted a real and reasonably definite economic gain. The issue in contention is whether the money value of the meals and lodging was fixed by the parties at the time that Indoor Football hired Foster-Rettig. Upon our review of the record, we conclude that, based upon the rationale of the Supreme

- 559 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

Court in *Maryland Casualty Co. v. Geary, supra*, the money value of the meals and lodging was fixed at the time of hiring. Accordingly, the compensation court did not err in including the value of these advantages in its calculation of Foster-Rettig's average weekly wage.

At trial, Foster-Rettig testified that at the time he started playing football for the Omaha Beef football team, he and Indoor Football agreed that Indoor Football would provide him with meals and lodging during the football season. In fact, Foster-Rettig testified that "room and board was required" to his employment with Indoor Football. Indoor Football did not present any evidence to contradict Foster-Rettig's assertion that "room and board" was to be a part of his compensation package. In fact, during its cross-examination of Foster-Rettig, Indoor Football appeared to concede that Foster-Rettig was provided with these benefits during his employment. Indoor Football questioned Foster-Rettig about both the meal vouchers and the lodging he received. Based on the evidence presented at trial, we find support for the compensation court's determination that Indoor Football agreed, at the time of hiring Foster-Rettig, to provide him with meals and lodging as a part of his compensation.

However, similar to the situation presented in *Maryland Casualty Co. v. Geary*, 123 Neb. 851, 244 N.W. 797 (1932), Indoor Football and Foster-Rettig did not agree to a particular value for the meals and lodging which was to be a part of Foster-Rettig's compensation package. As the Supreme Court found in *Maryland Casualty Co. v. Geary, supra*, though, whatever the cost of the meals and lodging was, it was clearly within the contemplation and agreement of the parties. Given the Supreme Court's decision in *Maryland Casualty Co. v. Geary, supra*, and given the beneficent purpose of the workers' compensation law, we do not find that the compensation court erred in concluding that the cost of meals and lodging was a part of the compensation which Foster-Rettig contracted to receive.

- 560 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

Unlike the employee in *Maryland Casualty Co. v. Geary, supra*, however, Foster-Rettig was unable to establish with precision the amount that Indoor Football actually spent on his meals and lodging while he was employed by the company. The evidence Foster-Rettig presented about the value of the meals and lodging he received from Indoor Football did not demonstrate exactly what Indoor Football paid for these advantages, but, rather, it only estimated what such advantages may have cost during the spring of 2012 when Foster-Rettig was playing for the Omaha Beef football team.

Foster-Rettig testified that he did not know how much Indoor Football paid the hotel for members of the team to stay there, because Indoor Football paid the hotel directly. Prior to the trial, Foster-Rettig was unable to obtain records about the payments directly from the hotel, because it had gone out of business since the time he stayed there. In addition, Exhibit 17 reveals that when Foster-Rettig made discovery requests to Indoor Football regarding his accomodations for room and board, Indoor Football did not provide him with any payment records. In fact, during the discovery process the company denied paying for such benefits, even though it conceded at trial that such benefits were provided to Foster-Rettig. Instead of pursuing additional discovery from Indoor Football, Foster-Rettig chose to seek out estimates of the value of his lodging at the hotel. He offered into evidence a letter from a local travel agent, who estimated that from March to June 2012, the average nightly rate at the hotel was $50.

Foster-Rettig had similar difficulties in supplying the compensation court with an exact value of the meals he was given by Indoor Football during his employment, because he was provided with meal vouchers for each meal, rather than with a specific dollar amount or reimbursement for the amount he spent on food. Foster-Rettig indicated during his testimony that many of the meal vouchers he received were from restaurants that sponsored the Omaha Beef football team. As we stated above, during the discovery process, Indoor Football denied

- 561 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
FOSTER-RETTIG v. INDOOR FOOTBALL OPERATING
Cite as 25 Neb. App. 551

providing this benefit to Foster-Rettig. As such, Foster-Rettig was unable to provide the compensation court with records of exactly how much was spent on his meals during his employment. Instead, he offered into evidence a document indicating that the daily meal rates for traveling employees across the country ranged from $46 per day to $69 per day.

The compensation court utilized Foster-Rettig's evidence regarding the estimated values of his meals and lodging in calculating his average weekly wage. We cannot say that the court erred in relying on such evidence. Foster-Rettig attempted to obtain the exact values of the benefits he received from his employment with Indoor Football, but, due to intervening factors such as the closing of the hotel, and due to Indoor Football's failure to cooperate with discovery requests, Foster-Rettig was unable to obtain precise figures. Under these circumstances, we find Foster-Rettig's evidence of the value of the benefits to be sufficient to warrant inclusion in a calculation of his average weekly wage. Accordingly, we find that the court did not err in calculating Foster-Rettig's average weekly wage to be $903.25.

## CONCLUSION

We affirm the finding of the compensation court that Foster-Rettig's average weekly wage totaled $903.25. As such, we affirm the award to Foster-Rettig in its entirety.

Affirmed.