IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

BORTOLOTTI V. UNIVERSAL TERRAZZO AND TILE CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TERRY BORTOLOTTI, APPELLEE AND CROSS-APPELLANT,

V.

UNIVERSAL TERRAZZO AND TILE COMPANY AND ACUITY INSURANCE COMPANY, APPELLANTS
AND CROSS-APPELLEES, AND COLUMBIA INSURANCE GROUP, APPELLEE.

Filed February 5, 2019.    No. A-17-1024.

Appeal from the Workers' Compensation Court: JULIE A. MARTIN, Judge. Affirmed as modified.

John W. Iliff and Adam J. Wachal, of Gross & Welch, P.C., L.L.O., for appellants.

John F. Thomas and Jay D. Koehn, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee Terry Bortolotti.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

I. INTRODUCTION

Universal Terrazzo and Tile Company (Universal) and Acuity Insurance Company (Acuity) appeal from the order of the Nebraska Workers' Compensation Court awarding benefits to Terry Bortolotti. Universal and Acuity assign that the compensation court erred in calculating Bortolotti's average weekly wage, overruling objections to Bortolotti's exhibits, awarding future medical benefits, and calculating past medical expenses. On cross-appeal, Bortolotti assigns the compensation court erred in declining to rely on several exhibits while calculating past medical benefits and in calculating past medical expenses. For the reasons set forth below, we affirm the compensation court's order as modified.

- 1 -

## II. BACKGROUND

Bortolotti has worked for Universal--a business that fabricates and installs tile, terrazzo, and granite--for most of his life. In 2011, Bortolotti became Universal's sole stockholder and president, which required him to manage the company's thirteen employees. Universal changed worker's compensation insurance providers while Bortolotti was president from Columbia Insurance Group (Columbia) to Acuity. Bortolotti suffered a prior injury to his right shoulder during his employment with Universal for which he had surgery in October 2011. He pursued a workers' compensation claim for this injury and reached a settlement with Columbia.

During the present litigation Bortolotti filed several petitions alleging that he sustained injuries in the course and scope of his employment with Universal. On June 26, 2015, he filed a petition alleging that he suffered injuries on November 23, 2009, to his "head, back, arms, and mental." On July 24, he filed another petition alleging he suffered injuries on June 1, 2010, again to his "head, back, arms, and mental." In both of these petitions, Bortolotti claimed to receive "salary or wages, or other earnings [from Universal] of approximately $1,300 per week." Universal and Columbia's answer to Bortolotti's June 26 petition admitted that Bortolotti's "applicable average weekly wage . . . was $1,300.00 per week." Universal and Columbia's answer to the July 24 petition denied Borlotti's wage allegation.

On March 2, 2016, Bortolotti filed an amended petition, which alleged various injuries in 2009, 2010, and 2011, as well as a left-shoulder cumulative trauma injury sustained on June 14, 2013 and a repetitive trauma injury to his left wrist sustained on July 8, 2013. The amended petition alleged that he was earning $1,399.45 per week at the time of the 2013 injuries. Columbia was the workers compensation insurance provider for the injuries alleged in 2009, 2010, and 2011, and Acuity was the insurer at the time of the 2013 alleged injuries. Universal filed a motion to bifurcate the various injuries alleged in the amended complaint into two separately docketed cases. On April 7, the court granted Universal's motion, bifurcating Bortolotti's claims against Columbia and Acuity into two separately docketed cases.

On November 18, 2016, Bortolotti filed his third amended petition (the operative petition), again alleging various prior injuries, as well as the left-shoulder cumulative trauma injury sustained on June 14, 2013, at which time Bortolotti alleged that he earned $3,625 per week. Universal and Acuity's answer to the operative petition denied Bortolotti's wage allegation and left-shoulder injury. From this point forward, we collectively refer to Universal and Acuity as "Universal." Because the trial and this appeal relate only to the left-shoulder injury, we need not discuss the other injuries alleged by Bortolotti in his various petitions.

The compensation court held a trial on Bortolotti's left-shoulder injury claims on June 7, 2017. Bortolotti testified that, for 30 years, his employment with Universal required significant physical activity. He made terrazzo tile, which required him to lift 40 or 50 pound buckets of sand, 94 pound bags of cement, and 100 pound bags of marble chips into a mixer. He used a handheld saw to cut pieces of granite and marble, and he lifted finished pieces of material while storing or installing them. Bortolotti testified in his deposition that since 2007, medical restrictions from his right-shoulder injury required him to refrain from lifting above his waist when he assisted with installations, so he supervised. After becoming Universal's sole shareholder and president in 2011,

Bortolotti spent 60 percent of his time doing office and managerial work as opposed to physical labor.

Bortolotti first saw Dr. Richard Murphy, the orthopedic surgeon who performed his right shoulder surgery, about his left-shoulder injury on June 14, 2013. Dr. Murphy found and treated a tear in Bortolotti's left rotator cuff. Believing it to be the workers' compensation insurance provider responsible for the left-shoulder injury, Bortolotti sent the expenses for the left-shoulder treatments to Columbia, which initially paid them. Columbia stopped paying for those treatments, however, after a May 2015 defense medical examination. Bortolotti thereafter submitted bills for his left-shoulder treatments to his health insurance provider. As a result, he personally made the coinsurance payments required under his health insurance policy. Dr. Murphy operated on Bortolotti's left shoulder in December 2015. Bortolotti testified that after the surgery his left shoulder remained tender and was sore quite often.

Bortolotti testified that he paid $9,849.38 out-of-pocket, his health insurer paid $18,969, and Columbia paid $1,646 for the medical expenses related to his left shoulder.

Bortolotti offered as exhibits medical records from various doctors regarding his left-shoulder injury. Bortolotti offered an invoice from Omaha Orthopedic Clinic and Sports Medicine (Omaha Orthopedic) as exhibit 36 and payment records from Columbia and Bortolotti's health insurance provider as exhibits 37 and 40 respectively. Bortolotti offered exhibit 41, which is a document he prepared that summarized the medical expenses for treating his left shoulder and which notes whether the expenses were paid by Columbia, his health insurance provider, or himself. He also offered exhibit 39, which is a letter from Dr. Murphy. In the letter, Dr. Murphy assessed Bortolotti's upper left extremity to have a 15-percent impairment because of its repetitive use in his employment as a "marble granite fabricator." The letter explained that Bortolotti will require future imaging scans for his left-shoulder injury: "At the time of the most recent evaluation on September 15, 2016, because of patient's [sic] shoulder pain, I advised repeat MRI scans to determine if any further treatment would be beneficial for his residual shoulder pain." Universal objected to exhibits 36, 39, and 40, and the court reserved its ruling on Universal's objections. The court received the balance of the exhibits.

Bortolotti testified in his deposition that he did not receive a salary while he was Universal's sole shareholder and president. Universal offered a one-page Schedule E from Bortolotti's 2013 tax return, which is titled "Income from Passthrough Statement" and notes that Universal is an "S Corporation." This document shows "Interest Income" of $535, "Self-employment earnings(loss)/Wages" of $3,950, "Medical insurance - 1040" of $11,339, and "Qualified production activities income" of $186,783. Universal also offered a "payroll journal," showing "debit" payments to Terry Bortolotti during 2013 totaling $3,950. Bortolotti denied that the payroll journal was an accurate reflection of his income from Universal on June 13, 2013. Bortolotti admitted that he and his wife recorded wages earned of $12,000 in 2013 on the Form 1040 they submitted to the IRS, and he explained that those earnings were his wife's wages from her employment at Universal. The Form 1040 is not included in the record.

Bortolotti's attorney asked him the following question about his 2013 tax return: "[U]nder Item 17, it shows rental real estate, royalties, partnerships, S Corporations, trusts, attached Schedule E. And that number is 198,873. Is that the income that the corporation would have

- 3 -

received from the work for 2013?" Bortolotti answered "Yes." Bortolotti then testified that he took a weekly draw from that $198,873 in the amount of $3,625 in 2013. Our record does not contain the portion of Bortolotti's 2013 tax return that shows "Item 17" income of $198,873.

At the conclusion of the trial, Bortolotti requested that the court take judicial notice of several of the pleadings, which the court marked as exhibits and were made part of the record: the June 26, 2015 and July 24, 2015 petitions, the July 16, 2015 and August 11, 2015 answers of Universal and Columbia, and the March 2, 2016 amended petition.

On August 25, 2017, the compensation court entered an order, finding Bortolotti sustained a compensable injury to his left shoulder and awarding benefits to him. The court overruled Universal's objections to exhibits 36, 39, and 40 in the order. The court awarded Bortolotti $10,589 for past medical expenses, which included $9,528 from Omaha Orthopedic Clinic and $1,061 from two physical therapy providers. Because some of the charges in the Omaha Orthopedic invoice were for injuries not the subject of this trial, the court identified the specific charges causally related to the left shoulder from the other injuries. The court found that the treatments on February 2, 2015, April 24, 2015, December 23, 2015, April 11, 2016, and September 15, 2016, listed in exhibit 36 were primarily related to Bortolotti's left-shoulder injury. The court declined to rely on exhibits 37, 38, 40, and 41 when calculating past medical expenses because they were not "itemized bills" under Workers' Comp. Ct. R. of Proc. 10 (2018). The court found that Bortolotti should be reimbursed for the $9,849.38 he paid out-of-pocket for his left-shoulder treatments. The court also awarded future medical benefits that are reasonable, necessary, and causally related to the work-related injury.

The court expressed difficulty calculating Bortolotti's average weekly wage:

The Court spent a considerable amount of time on this issue, more time than it should have. The lack of exhibits left the Court with a formidable and difficult task. Clearly, plaintiff should have provided better evidence. Without tax returns, the Court was unable to verify if business expenses had been properly deducted from the company's gross earnings he relied upon. [Citation omitted.] A simple mathematical calculation did not substantiate the weekly draw testified to ($198,873/52 weeks = $3,824.48), leaving the Court to question his testimony on this issue. On the other hand, the Court does not find defendants' calculation to represent his correct earnings either. The only consistent figure, to some extent, that the Court found came from the pleadings. His two Petitions alleged a weekly wage of $1,300.00 and the [amended petition] alleged the more specific number of $1,399.45. Accepting the allegations in the pleadings as true and not being sufficiently persuaded the amount is incorrect, the Court holds that plaintiff's average weekly wage on June 13, 2013 was $1,399.45.

As a result, the court found that Bortolotti was entitled to the maximum compensation rate and would receive $728 weekly from Universal for 33.75 weeks, a total permanency benefit of $24,570.

Universal appeals the compensation court's award, and Bortolotti cross-appeals.

## III. ASSIGNMENTS OF ERROR

Universal assigns, consolidated and restated, that the workers' compensation court erred in (1) calculating Bortolotti's average weekly wage; (2) overruling objections to exhibits 36, 40, and 39; (3) awarding Bortolotti future medical benefits; and (4) awarding out-of-pocket past medical expenses to Bortolotti as well as calculating Bortolotti's other past medical expenses.

On cross-appeal, Bortolotti assigns, restated, that the workers' compensation court erred in (1) declining to rely on exhibits 37, 40, and 41 when it calculated past medical expenses and (2) calculating the amount it awarded Botolotti for past medical expenses.

## IV. STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Foster-Rettig v. Indoor Football Operating*, 25 Neb. App. 551, 908 N.W.2d 426 (2018). See, also, Neb. Rev. Stat. § 48-185 (Reissue 2010).

Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Escobar v. JBS USA*, 25 Neb. App. 527, 909 N.W.2d 373 (2018). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017).

The determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law. *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 803 N.W.2d 408 (2011). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Kohout v. Bennett Constr.*, 296 Neb. 608, 894 N.W.2d 821 (2017).

## V. ANALYSIS

### 1. AVERAGE WEEKLY WAGE

Universal assigns that the compensation court was clearly wrong in finding that Bortolotti met his burden to prove his average weekly wage. Aside from Bortolotti's testimony, which the compensation court specifically questioned on the issue of wages, Universal argues that Bortolotti offered no evidence to support the court's findings. Universal, thus, insists the evidence was insufficient to support any average weekly wage calculation.

In workers' compensation cases, the amount of benefits awarded to a claimant is dependent upon the court's calculation of the claimant's average weekly wage. *Mueller v. Lincoln Public Schools*, 282 Neb. 25, 803 N.W.2d 408 (2011). Generally, the employee has the burden to establish his or her average weekly wage. See, e.g., *Zitterkopf v. Aulick Indus.*, 16 Neb. App. 829, 753 N.W.2d 370 (2008) (stating employee has burden of proof in actions under Nebraska Workers' Compensation Act); *Bituminous Casualty Corp. v. Deyle*, 225 Neb. 82, 402 N.W.2d 859 (1987) (stating employee had burden to establish wages that employee received). The goal of any average income test is to produce an honest approximation of the claimant's probable future earning capacity. *Powell v. Estate Gardeners*, 275 Neb. 287, 745 N.W.2d 917 (2008). The emphasis is on not distorting the employee's average weekly wage. *Mueller, supra*.

In *Bituminous Casualty Corp., supra*, the Nebraska Supreme Court was faced with the question of determining wages for a claimant who was the president, general manager, and majority shareholder of a corporation. The workers' compensation court found that the claimant was injured in the course and scope of his employment and was entitled to benefits, including a temporary total disability benefit. On appeal, the Nebraska Supreme Court modified the compensation court's award to exclude the temporary total disability benefits because the claimant failed to prove that he earned wages from the corporation as defined in the Nebraska Workers' Compensation Act. Although the claimant received a variety of benefits from the corporation, including access to corporate properties for personal use, a pickup truck, insurance, a telephone in his home, and the ability to buy properties constructed by the company at cost to resell for a profit, he did not report these benefits as income for federal or state income tax purposes, nor did the company report these benefits as salary to the claimant. The Supreme Court declined to use the value of these benefits as evidence of wages, concluding, as a matter of law, the evidence did not support that the claimant was receiving any compensation for performing his duties as an officer of the company. *Id.*

Here, Bortolotti was the sole shareholder and one of several employees of Universal. As the trial court noted, Bortolotti provided little evidence from which to accurately compute his wages. He did not offer any income tax records or documentation of wages, which the court found to be "of great puzzlement." Universal offered a one-page Schedule E, purportedly from Bortolotti's 2013 income tax return, that shows "qualified production activities income" from Universal of $186,783. This document, standing alone, is insufficient to determine Bortolotti's average weekly wage.

Bortolotti testified, purportedly from a portion of his tax return that is not in the record, that "the corporation" received income of $198,873 in 2013, from which he took $3,625 in weekly draws. We agree with the compensation court that without supporting documentation, this testimony is insufficient to establish Bortolotti's average weekly wage.

Bortolotti argues that *Foster-Rettig v. Indoor Football Operating*, 25 Neb. App. 551, 908 N.W.2d 426 (2018), supports his position that his testimony of his average weekly wage was sufficient evidence. We disagree. In *Foster-Rettig*, the plaintiff was unable to provide specific documentation of the value of the lodging and meals that his employer provided to him. The record showed that the employer paid the lodging benefit directly to the hotel and provided the plaintiff with meal vouchers. However, the employer failed to provide the plaintiff with information about

the amounts of these benefits through discovery, despite the plaintiff's efforts to obtain it. In addition, the hotel that housed the plaintiff had gone out of business and its records were not available. The employee adduced evidence through a local travel agent that estimated the average nightly rate at the hotel during the pertinent time frame. The employee also adduced evidence indicating the daily meal rates for traveling employees across the country. The compensation court used the plaintiff's evidence regarding the estimated values of his lodging and meals in calculating his average weekly wage.

The instant case differs from *Foster-Rettig*. Here, the documents to establish Bortolotti's 2013 income were records in his control, such as his individual income tax return, corporate return, or other corporate records. He did not offer those records into evidence. Further, unlike the plaintiff in *Foster-Rettig*, Bortolotti did not produce *any* documentation to establish his income at the time of the 2013 injury.

The compensation court nevertheless determined Bortolotti's average weekly wages by relying on pleadings in this case as well as pleadings from the separately docketed case to which Bortolotti, Universal, and Columbia were parties. We note that the compensation court took judicial notice of Universal and Columbia's answer to Bortolotti's June 26, 2015, petition, which answer contained an admission that Bortolotti earned $1,300 in weekly wages at the time of the injuries alleged in that petition. The June 26 petition, however, alleged Bortolotti's wages at the time of a 2009 injury, not at the time of the 2013 left-shoulder injury--the only injury at issue in this case. In his March 2, 2016, amended petition, Bortolotti alleged that his weekly wages were $1,399.45 at the time of his 2013 left-shoulder injury. Although the trial court took judicial notice of this petition, it was not asked to take judicial notice of Universal's answer to it. The answer contained in the transcript, however, denied this allegation. We also note that Universal denied Bortolotti's allegation in his third amended petition (the operative petition) that his average weekly wage was $3,625. Thus, none of the judicially noticed pleadings from Universal admitted any average weekly wage from the 2013 left-shoulder injury.

A trial court cannot take judicial notice of disputed allegations. See *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017). See, also, Neb. Rev. Stat. § 27-201(2) (Reissue 2016). While cognizant of the beneficent purpose of the workers' compensation act, we conclude that the compensation court erred in determining Bortolotti's average weekly wage at the time of his 2013 left-shoulder injury from the allegations in his petitions, which allegations Universal denied.

Neb. Rev. Stat. § 48-121(3) (Reissue 2010) provides guidance for determining wages when an employer and employee cannot agree on the amount of wages to be paid in cases not covered by the schedule:

Compensation under this subdivision shall not be more than the maximum weekly income benefit specified in section 48-121.01 nor less than the minimum weekly income benefit specified in section 48-121.01, except that if at the time of the injury the employee received wages of less than the minimum weekly income benefit specified in section 48-121.01, then he or she shall receive the full amount of such wages per week as compensation[.]

The record contains evidence that Universal paid Bortolotti some wages in 2013. Universal adduced evidence that Bortolotti's 2013 wages were $3,950. Accordingly, Bortolotti should have been awarded the minimum weekly income benefit, which in 2013 was $49 per week. See Neb. Rev. Stat. §§ 48-121.01 and 48-121.02 (Reissue 2010). See, also, Tables of Maximum/Minimum Compensation Benefits, Burial Benefits, and Mileage Reimbursement Rates, Nebraska Workers' Compensation Court, https://www.wcc.ne.gov/legal-practice-statutes-and-rules/benefit-rates (last visited Aug. 31, 2018). We modify the court's order to award a weekly benefit of $49 per week for 33.75 weeks, or a total award of $1,653.75.

## 2. EVIDENTIARY OBJECTIONS

Universal and Bortolotti both assign error to several of the compensation court's evidentiary rulings. The Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence. *Moyers v. International Paper Co.*, 25 Neb. App. 282, 905 N.W.2d 87 (2017). Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). As discussed below, the compensation court did not abuse its discretion in making any of the challenged evidentiary rulings.

### (a) Exhibit 39

Universal assigns that the compensation court erred in admitting exhibit 39 into evidence over its relevance objection. We conclude that the district court did not err in admitting the exhibit.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015). For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence. *Id.*

Exhibit 39 contains five letters from Dr. Murphy describing Bortolotti's left-shoulder injury. In a letter dated October 16, 2016, Dr. Murphy summarizes the injuries to Bortolotti's left and right shoulders and the percentage of his impairment to a reasonable degree of medical certainty. The letter also provides Dr. Murphy's recommendation that Bortolotti should receive further MRI scans because of his persistent shoulder pain. The record contains ample evidence of Dr. Murphy's inspections of Bortolotti's shoulder. We thus find a rational, probative connection between exhibit 39 and the extent of Bortolotti's injuries as well as their future treatment. The compensation court did not abuse its discretion in admitting it.

### (b) Exhibit 36

Universal assigns that the compensation court erred in receiving into evidence exhibit 36, which is an itemized invoice from Omaha Orthopedic showing the name and date of treatments its physicians provided to Bortolotti. He argues the document is irrelevant because it includes billing for treatments unrelated to Bortolotti's left-shoulder injury. Although the exhibit contains treatments for matters other than the left-shoulder injury, the court separated out only those

expenses related to Bortolotti's left-shoulder injury. The exhibit is clearly relevant to Bortolotti's past medical expenses for his left-shoulder injury, and we find the court did not abuse its discretion in admitting it.

(c) Exhibit 40

Universal also assigns that the compensation court erred in receiving into evidence exhibit 40, a printout from Bortlotti's health insurance provider detailing the expenses it paid for Bortolotti's left-shoulder treatments. Although the compensation court admitted exhibit 40, it expressly declined to rely on it. Thus any error in admitting exhibit 40 is harmless, andwe need not address this assignment. See *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018).

(d) Failure to Rely on Exhibits 37, 40, and 41

Bortolotti assigns that the compensation court erred in failing to rely on exhibits 37, 40, and 41 in calculating past medical expenses because they were not "itemized bills" under Workers' Comp. Ct. R. of Proc. 10. We find that because the excluded exhibits were not "bills" under Rule 10, Bortolotti's assignment that the compensation court should have relied upon them is without merit.

Workers' Comp. Ct. R. of Proc. 10(A) describes the evidence of medical and vocational rehabilitation that a compensation court may receive in place of testimony:

> The Nebraska Workers' Compensation Court is not bound by the usual common law or statutory rules of evidence; and accordingly, with respect to medical evidence on hearings before a judge of said court, written reports by a physician or surgeon duly signed by him, her or them and *itemized bills* may, at the discretion of the court, be received in evidence in lieu of or in addition to the personal testimony of such physician or surgeon; with respect to evidence produced by vocational rehabilitation experts, physical therapists, and psychologists on hearings before a judge of said court, written reports by a vocational rehabilitation expert, physical therapist, or psychologist duly signed by him, her, or them and *itemized bills* may, at the discretion of the court, be received in evidence in lieu of or in addition to the personal testimony of such vocational rehabilitation expert, physical therapist, or psychologist.

[Emphasis supplied.]

Merriam-Webster defines a "bill" as "an itemized account of the separate cost of goods sold, services performed, or work done: invoice." Merriam-Webster's Collegiate Dictionary 113 (10th ed. 2001). It follows, therefore, that under Rule 10, a bill is an account or invoice from a medical provider or vocational rehabilitation professional. Exhibit 37 is a printout from Columbia of the invoices it received for treatments provided to Bortolotti. It does not show whether those treatments were for Bortolotti's left shoulder. Exhibit 40 is a printout from Bortlotti's health insurance provider detailing the expenses it paid for Bortolotti's left-shoulder treatments. And exhibit 41 is Bortolotti's summary of medical expenses related to his left-shoulder injury. None of these exhibits are accounts or invoices from a medical provider for services performed. So

although these documents may provide detailed summaries of treatments Bortolotti received, they are not "bills," and the compensation court did not abuse its discretion in declining to rely on them.

### 3. FUTURE MEDICAL EXPENSES

Universal assigns that the compensation court erred in awarding future medical expenses to Bortolotti. Universal argues that Dr. Murphy did not opine that the MRI scans were necessary to treat Bortolotti's left-shoulder injury. Instead, Dr. Murphy recommended the MRI scans "to determine if any further treatment would be beneficial." Universal argues that Dr. Murphy's statements are speculative and do not show that future medical treatments are necessary. We disagree.

An award of future medical expenses in a workers' compensation case requires explicit evidence that future medical treatment is reasonably necessary to relieve the injured worker from the effects of the work-related injury. *Adams v. Cargill Meat Solutions*, 17 Neb. App. 708, 774 N.W.2d 761 (2009). Once it has been determined that the need for future care is probable, the employer is liable for any future medical care shown to be reasonably necessary under Neb. Rev. Stat. § 48-120 (Reissue 2010), even if the necessity for a specific procedure or treatment did not exist at the time of the award. *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012).

Dr. Murphy observed that Bortolotti continues to experience shoulder pain. In his professional judgment, MRI scans are necessary to determine whether other treatments may relieve Bortolotti's pain. As a result, we find the compensation court's order requiring Universal to pay for MRI scans was not clearly wrong. Further, the order does not foreclose Bortolotti from establishing at a later date that further operations are reasonably necessary to treat his compensable injury and is therefore encompassed under the terms of the award. The Nebraska Supreme Court has approved of similar awards. See *Sellers, supra* (finding court award of future medical treatment included imaging scans and plaintiff could prove knee replacement surgery was encompassed in future medical expense award at later date). Thus, we affirm the award of medical expenses proven in the future to be related to his compensable left-shoulder injury.

### 4. PAST MEDICAL EXPENSES

Both Universal and Bortolotti assign the compensation court was clearly wrong in the amount of past medical expenses it awarded.

### (a) Out-of-Pocket Expenses

Universal argues that the compensation court erred in awarding Bortolotti out-of-pocket expenses in the amount of $9,849.38. Universal claims that because the court did not rely on exhibit 41, it had no basis to award this amount. We agree. The compensation court specifically declined to rely upon exhibits 37, 38, 40, and 41 because they were not itemized bills as required by rule 10. Although Bortolotti testified that his out-of-pocket medical expenses were $9,849.38, he based his answer "according to" exhibit 41, which identified the same total amount. Because the compensation court specifically rejected exhibit 41, we modify the court's order to eliminate its $9,849.38 award for Bortolotti's out-of-pocket medical expenses.

### (b) Expenses in Exhibits 37, 40, and 41

Bortlotti argues that the compensation court erred in failing to incorporate the medical expenses described in exhibits 37, 40, and 41 into its past medical benefit award. He asserts these exhibits together prove additional medical expenses of $35,952. Because we find the compensation court did not abuse its discretion in declining to rely on exhibits 37, 40, and 41, we need not further address this assignment. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. See, *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018); *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015), *modified on other grounds* 23 Neb. App. 732, 877 N.W.2d 271 (2016).

### (c) Past Medical Expenses in Exhibit 36

Universal and Bortolotti both argue the expenses contained in exhibit 36 do not support the compensation court's past medical expense award, andwe agree. As discussed below, we conclude the compensation court miscalculated the medical expenses contained in Exhibit 36, and we modify the compensation court's order accordingly.

### (i) Documentation for Expenses

Universal argues that the compensation court lacked documentation for some of the medical expenses it awarded. Particularly, Universal asserts Bortolotti failed to provide documentation of medical appointments on April 11, 2016 and September 15, 2016. Exhibit 36, however, clearly details the dates that Bortolotti incurred medical expenses to treat his left-shoulder injury. While the document also contains treatments for other unrelated matters, the compensation court was able to separate those treatments from the treatments relevant here.

When the employee presents evidence of medical expenses resulting from injury, he or she has made out a prima facie case of fairness and reasonableness, causing the burden to shift to the employer to adduce evidence that the expenses are not fair and reasonable. *Escobar v. JBS USA*, 25 Neb. App. 527, 909 N.W.2d 373 (2018). Bortolotti presented evidence of his medical expenses through exhibit 36. Universal offered no evidence at trial that these expenses were unfair or unreasonable, and thus it has not met its burden to disprove the expenses Bortolotti claimed. As a result, we find Universal's argument that Bortolotti failed to prove the charges for services on April 11 and September 15, 2016, to be without merit.

### (ii) Calculation of Expenses in Exhibit 36

Both Universal and Bortolotti argue that the compensation court miscalculated past medical expenses from Omaha Orthopedic treating Bortlolotti's left-shoulder injury. Universal claims that based on the dates contained in the compensation court's order, the court should have awarded Bortolotti $9,526 rather than $9,528. Bortolotti, on the other hand, argues that based on the dates of service listed in the court's award, the court failed to add a $150 charge for Omaha Orthopedic's treatments to his left shoulder, which should increase his award from $9,528 to $9,678.

We agree that the compensation court's calculation of Omaha Orthopedic's charges for procedures to Bortolotti left shoulder was clearly wrong. After a de novo review of the record, we

find Universal's calculation of the expenses contained in exhibit 36 is correct. The court found that the treatments on February 2, 2015, April 24, 2015, December 23, 2015, April 11, 2016, and September 15, 2016, listed in exhibit 36 were primarily related to Bortolotti's left-shoulder injury. Bortolotti's calculation included a $152 charge for a procedure to his left shoulder, which he asserts occurred on December 23, 2015. Exhibit 36, however, does not show a $152 treatment to Bortolotti's left shoulder on that date. Instead, adding together the charges related to Bortolotti's left-shoulder injury on the dates the compensation court listed in its award shows a total of $9,526. We modify the court's award to reflect our calculation.

In his reply brief, Bortolotti argues that the compensation court inadvertently omitted a $152 expense, which exhibit 36 shows was related to his left-shoulder injury and occurred on December 31, 2015. Bortolotti's attempt to make the argument for the first time in the reply brief is too late. The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief. *Id.*

## VI. CONCLUSION

We conclude that the compensation court erred in calculating Bortolotti's average weekly wage based upon the allegations in his pleadings, and we modify the court's order to award Bortolotti permanency benefits calculated using the minimum income benefit rate. We find no abuse of discretion in the compensation court's admission of exhibits 36, 39, and 40. We also find no abuse of discretion in its decision not to rely on exhibits 37, 40, and 41. We conclude that the compensation court was clearly wrong in its award of Bortolotti's out-of-pocket expenses and past medical expenses from Omaha Orthopedic. We eliminate the court's $9,849.38 award for Bortolotti's out-of-pocket expenses and reduce his past medical expenses by $2 to reflect the procedures listed in exhibit 36. In all other respects, we affirm the judgment.

AFFIRMED AS MODIFIED.